[Civ. No. 59156. Second Dist., Div. Four. Mar. 20, 1981.]

OVERLAND PLUMBING, INC., Plaintiff and Respondent, v. TRANSAMERICA INSURANCE COMPANY, Defendant and Appellant.

478

---

COUNSEL

Stearns & Nelson and Joe A. Austere for Defendant and Appellant.

Boren, Elperin, Howard & Sloan, William Elperin, Steven J. Revitz and Ralph B. Dash for Plaintiff and Respondent.

## OPINION

EARLY, J.*—Defendant Transamerica Insurance Company appeals from a summary judgment granted to plaintiff Overland Plumbing, Inc. in the sum of $32,067.88 plus interest and costs upon a loss covered by a policy of theft insurance. Transamerica does not dispute the facts that Overland suffered a loss, that its claim was timely filed, nor that it was covered by the policy, but vigorously contends that Overland has not legally shown that it suffered a loss exceeding $2,100. As the policy had a $1,000 deductible clause, Transamerica tendered $1,100, the maximum liability that it concedes under the policy. No contention is made that the amounts of either the interest or the costs are incorrect.

Transamerica contends that Overland's moving papers are suspect on the grounds of credibility and should not have been believed by the trial court, that the declaration of Sam Deutsch upon which Overland relies to establish the fact of and the amount of its loss is contradicted by a report he gave to the police. Transamerica complains that Overland failed to comply with an arbitration provision in the policy, that counsel for Overland should disqualify himself and withdraw under the principle of *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971], and that triable issues of fact are created by its counterdeclarations. It argues that its counterdeclarations may properly be based "on hearsay statements or on unauthenticated records." We disagree.

Although the complaint herein is not verified, Overland does not rely on it to establish anything factual. Instead, it relies on declarations by Steven J. Revitz, counsel for plaintiff, and by Sam Deutsch, upon certain interrogatories and the answers thereto authenticated by Steven J. Revitz and upon a copy of policy F8461986 authenticated by Naftali Deutsch.

The declaration of Sam Deutsch filed July 18, 1979, recites that the facts set forth are personally known to him firsthand. It complies with all requirements as to form. He states that, as manager of the facility from which the theft occurred, he had purchased all materials stored there and had supervised their arrangement into different piles for use on different jobs. When he secured the premises at 4 p.m. on Friday, February 18, 1977, he locked two guard dogs inside. About 9 a.m. the

---

*Assigned by the Chairperson of the Judicial Council.

next morning he entered the premises to feed the dogs, discovered they were missing, found that the Oxnard Street gate had been broken open, searched the neighborhood unsuccessfully for the dogs, returned after an hour, discovered that seven large boxes of faucets were missing and then called the police who arrived about ninety minutes later. The police stayed about 15 minutes. He told them that "at the time, I was aware of only the Faucets being missing." Before he left again, he had the broken gate fixed.

He further declared that on Monday, February 21, 1977, he returned to the facility about 7 a.m. and "at the request of my employer, began inventorying the Warehouse and Yard for plumbing supplies .... In doing so, I discovered that groups of supplies which had been set aside for [certain jobs] were missing. ... Attached hereto ... are the job tickets pertaining to each of said jobs which contain an inventory of the supplies that were stolen ...." Also attached were some photographs of the facility taken April 16, 1979—two years after the theft. The job tickets were each dated February 17, 1977, which was the Thursday before the theft. The prices on the tickets total $33,067.88. With respect to the value of the goods stolen, the declaration recites that "their value ... amounted to $33,067.88."

The declaration further recites that, "I specifically recall that the stolen items were present at the Facility on February 18, 1977 before I left the same. The reason why I did not discover the same on February 19, 1977, was because my thoughts were concentrated on the missing Dogs and because there are so many orders for various jobs grouped throughout the Facility that, without conducting an inventory, it would have been impossible to remember each one. ...

"When I discovered that the Stolen Items were missing, I then telephoned Barry Serber, the then controller of OVERLAND, to report the same and, it was my understanding that he was to be responsible for notifying the police and the insurance company of the same."

Transamerica's response to the motion for summary judgment attacked the credibility of some of Sam Deutsch's statements. Thereafter his supplemental declaration was filed August 26, 1979. In it he states that, "The 'inventory' referred to above was conducted in the following manner: I took the job sheets for various projects in which plaintiff was supplying the plumbing materials which had already been grouped together, including the job tickets attached ... to my previous

Declaration, and went through the Facility to make sure that those groupings were still present, I did not physically list each item of inventory at the Facility on said date nor did I use an existing physical inventory (other than the aforementioned job tickets) to determine whether any items had been stolen. It was because I used the job tickets as my point of reference that I responded to TRANSAMERICA'S Second Set of Interrogatories by stating that no *physical* inventory had been completed between February 19 and April 6, 1977." (Italics in original.)

Transamerica's answers to Overland's interrogatories admitted that it issued policy F8461986 for theft coverage at plaintiff's facility at the time of the theft subject to $1,000 deductible, that it had "received written notice as provided by the insurance policy on April 6, 1977" and that it was "not contending that plaintiff did not file its notice of claim within the 60 days as provided by the policy."

If these documents stood alone and uncontested, they would be sufficient to support the judgment entered. The job tickets are adequately authenticated, and, together with Sam Deutsch's declarations, establish the amount of the loss. Transamerica contends correctly that the photographs were not admissible, being neither relevant nor properly authenticated, but they cannot reasonably be considered to be material to any issue in the case. ■ The presence of inadmissible evidence regarding an immaterial fact in a declaration supporting a motion for summary judgment is not a valid ground for denying the motion. (*Hidalgo* v. *Anderson* (1978) 84 Cal.App.3d 378, 381 [148 Cal.Rptr. 557].)

■ The policy of insurance herein contained an arbitration provision that either party could invoke in the event of a dispute as to the amount of a loss. Transamerica contends that Overland failed to invoke it when advised of its right to do so. In pertinent part, the provision states that, "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, *on the written demand of either*, each shall select a competent and disinterested appraiser and, notify the other of the appraiser selected within 20 days of such demand. ... The appraisers shall then appraise the loss ...." (Italics added.) There is nothing in the record to indicate that Transamerica exercised its option to invoke this provision. Being expressly optional, there was no duty on Overland to do so, and its failure to do so was not a breach of the policy.

■ Because Steven J. Revitz, counsel for Overland, filed two declarations in support of Overland's motion for summary judgment, Transamerica argues that "he should disqualify himself and withdraw." Transamerica made no motion to that effect in the trial court and has therefore waived the point on appeal. (*Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 319 [74 Cal.Rptr. 534, 449 P.2d 750].)

■ Transamerica states that Overland filed its "Proof of Loss" on June 24, 1977, not more than 60 days after the theft occurred. This statement is supported only by an inadmissible statement (inadmissible because it was not a matter of which he had declared he had personal knowledge nor to which he was competent to testify) in the declaration of Transamerica's declarant Hoy Mitchell. The policy provided that a proof of loss should be rendered to Transamerica by the insured within 60 days after the loss "unless such time is extended in writing by the company." This provision in the policy is obviously for the benefit of Transamerica and it could waive compliance therewith. Even if Overland breached this covenant in the policy, nothing in the record shows any resulting prejudice to Transamerica, nor did Transamerica contend in the trial court or herein that this constituted a reason to deny Overland's motion for summary judgment.

"[I]t is the duty of counsel by argument and the citation of authority to show the reasons why the rulings complained of are erroneous. Contentions supported neither by argument nor citation of authority are deemed to be without foundation, and to have been abandoned." (*Follett* v. *Brown* (1931) 118 Cal.App. 198, 200 [5 P.2d 51]; *Sutter* v. *Gamel* (1962) 210 Cal.App.2d 529, 531 [26 Cal.Rptr. 880]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4395.)

Transamerica did file counterdeclarations opposing Overland's motion for summary judgment together with interrogatories directed to Overland and the answers thereto.

■ A copy of the police report of the burglary as reported by Sam Deutsch to the police on February 19, 1977, is attached to the counter-declaration of Hoy Mitchell filed August 20, 1979. Even if this police report were admissible, its contents did not create any conflict with the facts relied upon by Overland. It discloses that Sam Deutsch reported that the thieves "removed 7 large boxes cont[aining] plumbing fixtures (faucets)" priced at $2,100 and that "RSD will take inventory & notify Van Nuys invest[igators]." Speaking precisely, there is no inconsistency

between the different statements of Sam Deutsch. His failure on the date he reported to the police to discover and report to them the bulk of the property stolen is fully and reasonably explained by him.

Although Code of Civil Procedure section 437c provides that a "summary judgment shall not be denied on grounds of credibility," it makes an express exception "in the discretion of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to such fact ...." Sam Deutsch was, of course, such a "sole witness."

In reliance on Overland's answers to interrogatories to the effect that in May 1978 Overland was unable to locate a physical inventory for 1976, that it did not complete an inventory between February 18, 1977, and April 6, 1977, that it could not produce copies of its purchase or sales orders between December 30, 1976, and February 18, 1977, because they were destroyed before requested (being over a year old) and that a complete inventory was not made by Overland until July 31, 1977, Transamerica contends that the trial court should disbelieve Sam Deutsch's declaration. We disagree. On this record we cannot hold that the trial court abused its discretion by failing to reject the Deutsch declarations for reasons of credibility.

Transamerica filed the counterdeclaration of Hoy Mitchell on August 20, 1979. Except for its first, third, fourth, sixth and eighth unnumbered paragraphs, the declaration was not on the declarant's personal knowledge as expressly required by section 437c; instead, it was "to the best of my knowledge and belief." "The phrase 'To the best of my knowledge' indicates something less than the 'personal knowledge' required under Code of Civil Procedure section 437c, and implies that the declarant's statement is based on something similar to information and belief." (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 719-720 [136 Cal.Rptr. 871].) In this respect, the Hoy Mitchell declaration is insufficient. Much of it is also conclusionary.

Transamerica contends that the party opposing a motion for summary judgment may base its counterdeclarations "even on hearsay statements or on unauthenticated records." This arguably was true before the 1973 amendments to Code of Civil Procedure section 437c (Stats. 1973, ch. 366). In *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 533, at page 556 [122 P.2d 264], the opinion holds that "affida-

vits [opposing a motion for summary judgment] to be sufficient need not necessarily be composed of strictly evidentiary facts." Transamerica's contention is also supported by the recent opinion in *Jos. Schlitz Brewing Co.* v. *Downey Distributor* (1980) 109 Cal.App.3d 908, 916 [167 Cal.Rptr. 510]. However, we believe that the effect of the 1973 amendments (see Zack, *The 1973 Summary Judgment Act—New Teeth for an Old Tiger* (1973) 48 State Bar J. 654, 656) is more accurately stated in *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909 [124 Cal.Rptr. 621]. In that opinion at page 915 Justice Kingsley states that: "Section 437c also requires that opposing as well as supporting affidavits and declarations be made and affirmatively shown to be on personal knowledge and based on admissible evidence. This new requirement reverses a line of California summary judgment decisions that permitted a summary judgment motion to be denied by a counterdeclaration suggesting triable issues of fact based on conclusions of law and other inadmissible evidence."

The counterdeclaration of Robert S. Butler authenticated the interrogatories to Overland and the answers thereto discussed above. Otherwise, it consisted entirely of argument regarding the credibility of Sam Deutsch.

No admissible evidence in the counterdeclarations filed by Transamerica created a triable issue of fact herein nor in any manner contradicted Overland's moving papers. Although not required to do so before the amendments to section 437c that became effective on January 1, 1981 (Stats. 1980, ch. 57) and which are not applicable herein, Overland filed written objections to the counterdeclarations filed by Transamerica on August 24, 1979, thereby giving Transamerica an adequate opportunity to correct their defects before the hearing below which was not held until November 21, 1979. It did not do so.

The judgment is affirmed.

Files, P. J., Woods, J., concurred.