[No. D010395. Fourth Dist., Div. One. Jan. 18, 1991.]

BETTE PETERSEN et al., Plaintiffs and Appellants, v. SECURITIES SETTLEMENT CORPORATION, Defendant and Respondent.

COUNSEL

Hinchy, Witte, Wood, Anderson & Hodges, Joe B. Cordileone and Cheryl L. Edwards for Plaintiffs and Appellants.

Gaston & Snow, Stanley M. Dupree, N. Grant C. Martin, Martin Unger and Donald Cohen for Defendant and Respondent.

OPINION

**BENKE, Acting P. J.**—In this case, plaintiff Bette Petersen appeals from a judgment dismissing her fraud and breach of fiduciary duty claims against Securities Settlement Corporation (SSC), which acted as a clearing agent for a series of stock transactions in which she and her late husband engaged. The judgment was entered following an order granting SSC's motion for summary judgment.

Because we find the scope of SSC's duties as a clearing agent was relatively narrow and did not include providing Petersen with investment advice, we affirm.

### FACTUAL SUMMARY

SSC and Petersen do not dispute that the following events gave rise to Petersen's claims: In 1983 Petersen and her husband, a retired physician,

had an investment account with Dean Witter Reynolds, Inc. (Dean Witter). Steve Smith was the Dean Witter broker responsible for the Petersens' account. In December 1983 Smith advised the Petersens to borrow against a life insurance annuity and invest the proceeds in shares of Pacific Gas & Electric and the Franklin Mutual Fund (Franklin).

In March 1984 Dr. Petersen, who had managed the couple's financial affairs, had a debilitating stroke.[1] Although Petersen had no experience in financial affairs, she became responsible for managing the couple's assets, including their stock portfolio.

In July 1984 Smith left Dean Witter and became a broker with Guildcor Financial, Inc. (Guildcor). Smith took the Petersens' account with him to Guildcor. In August 1984 Smith convinced Petersen she should sell the Pacific Gas & Electric and Franklin shares and borrow additional funds on an annuity contract; Smith further advised Petersen she should invest the proceeds of the stock sale and the loan in two "penny stocks," Investestate and Western Reserve.

The Petersens' purchase of the Investestate and Western Reserve shares was actually accomplished by SSC, acting as a clearing broker for Guildcor. Under a clearing agreement between Guildcor and SSC, SSC agreed to receive and deliver all funds and securities transferred in connection with stock transactions ordered by Guildcor's customers.

The Petersens' investment in Investestate and Western Reserve did not do well. By July 1987 the stocks had lost all of their original $85,000 in value.

## PROCEEDINGS BELOW

In July 1987 Petersen, on her own behalf and as guardian ad litem for her husband, filed a complaint against Smith and Guildcor. The complaint alleged causes of action for fraud, breach of Corporations Code sections 25400, subdivision (d) (intentional misrepresentation) and 25401 (negligent misrepresentation) and breach of fiduciary duty. The complaint alleged the defendants misrepresented the speculative nature of the Investestate and Western Reserve stocks and breached their fiduciary duty to the Petersens by recommending stocks which were not suitable for the Petersens.

---

[1] Dr. Petersen died while this case has been on appeal.

On August 8, 1988, Petersen filed an amended complaint which added SSC as a defendant and added a cause of action for breach of an agency agreement.[2]

On September 26, 1988, SSC filed a motion for summary judgment or in the alternative for summary adjudication of issues, a motion to stay the proceedings and a demurrer. As required by Code of Civil Procedure section 437c, subdivision (b), SSC filed a statement of undisputed facts in support of its motion for summary judgment. The last three facts set forth in SSC's statement are pertinent to this appeal. According to SSC's statement, "8. SSC never made any representations regarding the suitability for plaintiffs of their investments or any other investment advice to plaintiffs . . . . 9. Plaintiffs never relied on SSC for advice regarding their investments, including their investments in Investestate and Western Reserve stocks . . . . 10. SSC was the clearing broker for defendant Bliss Securities, Inc., formerly known as Guildcor Financial, Inc., and was involved with plaintiff's investments only in that capacity."

SSC argued that because it had made no representations to the Petersens, it was not liable for fraud and that because it was only a clearing broker, it had no fiduciary duty to investigate the suitability of the investments recommended by Smith. SSC also argued the Petersens' claims against it were barred by the statute of limitations.

In response to SSC's motion for summary judgment, Petersen filed a statement of disputed facts. Petersen disputed the last three facts set forth in SSC's statement. The statement she filed provides: "8. Disputed. The representations made by Smith, as alleged in Plaintiffs' First Amended Complaint, are attributable to SSC as a matter of law . . . . 9. Disputed. See No. 8 above. 10. Disputed. The documentary evidence suggests that SSC maintained an account for plaintiffs as their stockbroker." In addition to arguing Smith's statements were attributable to SSC, Petersen also asserted that because SSC acted as a stockbroker, it had a duty to disclose to the Petersens the speculative nature of their investment.

The trial court granted SSC's motion for summary judgment.[3] A judgment dismissing Petersen's complaint against SSC was filed and she filed a timely notice of appeal.

---

[2]The amended complaint also substituted Bliss Securities, Inc. (Bliss), as a defendant in place of Guildcor. The amended complaint alleged Bliss was the successor in interest to Guildcor. For the sake of clarity we will refer to Guildcor as the defendant in this action.

[3]Having granted SSC's motion for summary judgment, the trial court found the motion for summary adjudication, the motion for a stay and the demurrer moot and did not rule on them.

ISSUES ON APPEAL

On appeal Petersen argues the trial court erred in granting the summary judgment because she believes she presented evidence SSC breached its fiduciary duty to her and her husband. In particular she argues, as she did below, SSC was obligated to investigate the suitability of the stock purchases the Petersens were making and to advise them about the risks inherent in those purchases.

We affirm because, although we have no doubt SSC owed the Petersens the duties of a fiduciary, the scope of those duties did not include providing the Petersens with any investment advice.

DISCUSSION

I

*Summary Judgment*

■ "The purpose of a summary judgment motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. [Citations.] The summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. [Citation.] The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed. [Citations.] If the affidavits of the party opposing the motion contain factual averments within the general area of the issues framed by the pleadings, they are sufficient to make out a prima facie case. [Citation.] Any doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. [Citations.]" (*Cascade Gardens Homeowners Assn.* v. *McKellar & Associates* (1987) 194 Cal.App.3d 1252, 1255-1256 [240 Cal.Rptr. 113].) Mindful of these procedural principles, we turn to the substantive issues presented by Petersen's appeal.

II

*Ostensible Agency*

As we have seen, in addition to breach of fiduciary duty, the Petersens' complaint alleges causes of action for fraud, breach of Corporations Code sections 25400, subdivision (d) (intentional misrepresentation) and 25401

(negligent misrepresentation) and breach of an agency agreement. Although Petersen herself concedes that only Smith made representations to her and her husband, in the trial court she nonetheless argued Guildcor and Smith were acting as ostensible agents for SSC. Hence she argued their statements made SSC vicariously liable on the fraud, Corporation Code and agency causes of action.

Reliance on the doctrine of ostensible agency is not possible in this case. ■ " 'It is settled [in California] that ostensible authority arises as a result of conduct of the principal which causes the third party *reasonably to believe* that the agent possesses the authority to act on the principal's behalf.' " (*Kamen & Co.* v. *Paul H. Aschkar & Company* (9th Cir. 1967) 382 F.2d 689, 695.) Significantly, "[o]stensible authority must be based *upon acts or declarations of the principal* and not the conduct or representations of the alleged agent." (*South Sacramento Drayage Co.* v. *Campbell Soup Co.* (1963) 220 Cal.App.2d 851, 857 [34 Cal.Rptr. 137], italics added; Civ. Code, §§ 2317, 2334.)

■ The only contacts between SSC and the Petersens suggested in the record are a letter SSC sends customers for whom it provides clearing services, a margin agreement signed by the Petersens, a joint account authorization signed by the Petersens, an account instruction sheet which sets forth the Petersens' annual income and investment objectives and account statements from SSC.[4] None of these documents, read separately or together, suggest in any way that Smith or Guildcor was acting on behalf of SSC.

The letter SSC cutomarily sends its clearing account customers states: "As you may already know, Securities Settlement Corporation ('SSC') provides clearing services for the accounts which you and other customers maintain with your broker and SSC . . . . [T]he services your broker engaged SSC to perform are limited to the processing, or 'clearing' of transactions and related activities. SSC will not accept an order for execution nor can SSC give you advice about your investments."

Similarly the first term set forth in the margin agreement signed by the Petersens states: "1. [SSC] will act as clearing broker with respect to the accounts of the undersigned and will process transactions introduced by the firm with which orders of the undersigned are placed (such firm being herein referred to as the 'introducing firm')." The joint account authorization states: "You are authorized to receive orders in this account, to buy or sell securities (including marginal purchases and short sales) directly or

---

[4] Petersen concedes SSC did not make any oral representations to her.

through a firm which introduces such account to you from either of us, and such orders given by either of us shall be binding upon each of us."

Thus, rather than suggesting an agency relationship between SSC and Smith or Guildcor, the documents SSC provided to its customers in general and the Petersens in particular[5] reiterate the limited and discrete role SSC plays in its customers' stock transactions.

In sum then the record refutes any inference SSC suggested to the Petersens that Smith and Guildcor were acting on SSC's behalf.[6] Without proof of such conduct by SSC, Petersen's attempt to attach liability to SSC for the acts of Smith and Guildcor fails. (*South Sacramento Drayage Co.* v. *Campbell Soup Co., supra,* 220 Cal.App.2d at p. 857.) Thus as a matter of law, SSC is not liable to the Petersens on their claims for fraud, Corporations Code violations and breach of the agency agreement.

## III

### *Breach of Fiduciary Duty*

Having found SSC is not liable on the fraud, Corporations Code and breach of agency causes of action, we turn to the Petersens' principal claim on appeal: SSC's alleged breach of fiduciary duty.

The obligations of stockbrokers to their customers for whom they handle nondiscretionary accounts were described by the court in *Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690 [69 Cal.Rptr. 222] (*Twomey*). "It is contended that the sole obligation of the broker-dealer is to carry out the stated objectives of the customer. This may well be true when the broker is acting merely as agent to carry out purchases or sales selected by the customer, with or without the broker's recommendation. Here, however, there is evidence to sustain the finding that [the broker's] recommendations, as invariably followed, were for all practical purposes the controlling factor in the transactions. Under these circumstances, there should be an obligation to determine the customer's actual financial

---

[5] We note Petersen testified she does not remember seeing the account instruction sheet. Her lack of memory does not assist her in demonstrating SSC made any statement which would have had led her or her husband to believe Smith or Guildcor were acting as SSC's agents.

[6] We also note that on appeal, as she did below, Petersen contends the statute of limitations on her claims against SSC had not begin to run at the time she filed her original complaint against Smith and Guildcor because "the fact that SSC's name was on the documentation did not impart any knowledge of facts giving plaintiff/appellant a cause of action against SSC as a result of its later failure to fulfill its fiduciary duty toward the Petersens, or to establish a breach of contract against SSC."

situation and needs. [Citations.] If, as appears from the evidence and as found by the court, it was improper for her to carry out the speculative objectives which defendants attribute to her (but which her testimony does not fully admit), there was a further obligation to make this known to her, and refrain from acting except upon her express orders. [Citations.]" (*Id.* at p. 719; accord *Duffy* v. *Cavalier* (1989) 215 Cal.App.3d 1517, 1531-1532 [264 Cal.Rptr. 740] (*Duffy*).)

In this case the parties' principal dispute is whether SSC was subject to the disclosure obligations set forth in *Twomey* and *Duffy*. Petersen argues SSC should have warned her about the risky nature of the Investestate and Western Reserve investments. SSC claims that as a clearing broker it had no such duty. We agree with SSC.

SSC presented unrefuted evidence it made no investment recommendations to the Petersens. In particular we note SSC's contract to act as a clearing broker for Guildcor's customers prohibited it from providing such advice to Guildcor's customers. Moreover, an officer of SSC declared SSC's policy was not to provide investment advice to customers provided by an introducing broker, such as Guildcor, and that he was unaware of any deviation from this policy in the Petersens' case. Petersen's deposition testimony confirmed SSC's limited role. She stated the only person who provided her or her husband with advice about the Investestate and Western Reserve purchases was Guildcor's employee, Smith.

Despite the fact SSC did not provide the Petersens with any investment advice, Petersen argues that as a stockbroker, SSC should nonetheless be subject to the disclosure requirements set forth in *Twomey* and *Duffy*. We decline to create such an extension of *Twomey* and *Duffy*. Application of *Twomey* and *Duffy* to SSC would be inconsistent with the rationale of those cases as well as a large body of federal securities law.

First of all the disclosure obligations described in *Twomey* and *Duffy* are predicated expressly on evidence a broker's recommendation was the controlling factor in the customer's stock purchases. (*Twomey, supra,* 262 Cal.App.2d at p. 719; *Duffy, supra,* 215 Cal.App.3d at pp. 1531-1532.) Indeed, in both *Twomey* and *Duffy* the plaintiffs were seeking relief from the brokerage companies and individual brokers who actually provided the plaintiffs with investment advice. In adopting a disclosure standard for stockbrokers, the court in *Twomey* relied in particular on the personal nature of the relationship between the customer and the broker. " 'One situation with which the guideline should deal is the case mentioned earlier involving the "sweet trusting widow" who turns out to be a "greedy old lady." Typically, the "sweet trusting widow" has opened an account with

an investment objective stressing conservation of capital and stability of income. At some point—and for various reasons—she asks for recommendations of a speculative nature which will permit her to become rich quickly. At first glance, it may seem that no suitability problem arises if the securities recommended meet the new investment objective. However, literal wording of the NASD's suitability rule suggests, as does the concept of risk threshold, that the broker-dealer cannot, without more, act on her announced change in investment objective. The problem is similar to that which occurs when a customer opens an account and the broker-dealer helps him to decide on the proper investment objective. Here the broker-dealer's responsibility to help the widow is even stronger because of the established relationship between them. Thus, the guideline should state that the broker-dealer must assume the responsibility for ascertaining that the widow understands the investment risks involved in her changed objective. These risks should be explained by the broker-dealer in the light of her financial situation as known to him. The conversation between the broker-dealer and the widow may result in: (1) The widow's return to her old investment objectives. In this case she would not purchase any of the speculative securities she initially demanded. (2) The widow's adherence to her changed investment objective with the broker-dealer persuaded that she is able to bear the risks inherent in the new investment objective. In this case he should be permitted to recommend those speculative securities which he thinks are appropriate. (3) The widow's adherence to her changed investment objective without, however, the broker-dealer being persuaded that she is able to bear the risks inherent in the new investment objective. In this case the broker-dealer should be required to inform the customer that no speculative securities are suitable for her. If, nevertheless, she insists on purchasing such securities, the broker-dealer should be allowed to advise her about various speculative securities and purchase for her the ones which she selects. However, he should not, as long as he thinks that the securities are beyond her risk threshold, be permitted to solicit her purchase of any such speculative securities.' " (*Twomey, supra*, 262 Cal.App.2d at pp. 720-721.)

The direct and personal relationship between broker and customer, which the court's discussion in *Twomey* presupposes, is in sharp contrast to the Petersens' relationship with SSC. Plainly SSC did not have the ability to engage the Petersens in the sort of persuasive dialogue the court in *Twomey* believed would be necessary from time to time. In our view it would be unfair to impose upon SSC disclosure duties which can only be performed by a broker with direct access to customers.

Our unwillingness to impose the duties described in *Twomey* and *Duffy* on SSC is consistent with the views expressed in a number of federal

securities cases. (See, e.g., *Edwards & Hanly* v. *Wells Fargo Securities, etc.* (2d Cir. 1979) 602 F.2d 478, 484, cert. denied 444 U.S. 1045 [62 L.Ed.2d 731, 100 S.Ct. 734] (1980) ["[A] clearing agent . . . is generally under no fiduciary duty to the owners of the securities that pass through its hands."]; *In re Atlantic Fin. Mgt., Inc. Sec. Litigation* (D. Mass. 1986) 658 F.Supp. 380, 381 ["A clearing broker normally has no disclosure duty, if the clearing function was the only role performed by the broker."]; *O'Keefe* v. *Courtney* (N.D. Ill. 1985) 655 F.Supp. 16, 20, fn. 3 ["Plaintiffs miss the point—the Court has doubts whether there is anything about the relationship between an investment advisor and its independent clearing agent that would give rise to a duty of the agent to know what is and is not a high-risk investment, let alone a duty to ensure that the clients of investment advisers be made aware of such risk."].) Although, as Petersen points out, these cases involve violation of federal securities laws, not the common law breach of fiduciary duty she has alleged, the cases are nonetheless helpful because they recognize that the scope of a broker's duty to disclose is delimited by the nature of the broker's relationship with the customer. Where, as here, that relationship is confined to the simple performance of transactions ordered by a customer or his investment advisor, the duties described in *Twomey* and *Duffy* do not arise.[7]

Having determined SSC may not be found liable under *Twomey* and *Duffy*, we must next consider any alternative theories of liability available to Petersen. In this regard we note that although SSC may not have had a duty

---

[7] We recognize that under rule 405 of the rules of the New York Stock Exchange SSC was required to "[u]se due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization." However rule 382 of the exchange's rules expressly provides for agreements between exchange members such as SSC and brokers such as Guildcor, under which the respective functions and responsibilities of the introducing and carrying organizations may be allocated, including responsibility for "opening, approving and monitoring of accounts."

Here SSC's agreement with Guildcor expressly allocated to Guildcor the responsibility for supervising customer accounts. The agreement provided that "[Guildcor] will review and supervise the investment objectives of, and the suitability of investments made by every Customer and, as between SSC and [Guildcor], [Guildcor] will provide any investment advice provided to the Customer. [Guildcor] shall be responsible for insuring that all transactions in and activities related to all Accounts opened by it with SSC, including discretionary Accounts, will be in compliance with all applicable laws, rules, and regulations of the United States, the several states, governmental agencies, securities exchanges, and the NASD, including any laws relating to [Guildcor's] fiduciary responsibilities to Customers, either under the Employee Retirement Income Security Act of 1974 or otherwise, and in this connection, [Guildcor] shall diligently supervise the activities of its officers, employees and representatives with respect to such Accounts."

In light of the delegation of responsibility for supervision of accounts which is contemplated by the exchange rules and which in fact occurred between SSC and Guildcor, the exchange rules do not support any extension of the disclosure duties discussed in *Twomey* and *Duffy*.

to provide the Petersens with all the information required by *Twomey* and *Duffy*, arguably there are circumstances under which even a clearing broker nonetheless might be required to provide a customer with information about the nature of his or her investment.

■ Although the parties have not discussed the issue, the Restatement Second of Torts in section 551 provides, in pertinent part: "(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

In *Wells* v. *John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66, 72 [149 Cal.Rptr. 171] (*Wells* v. *John Hancock*), the court, relying on the Restatement, held that a life insurance company had an obligation to inform the assignee of one of its policies that the policy had lapsed. "[S]ince the processing of assignments of policies was part of John Hancock's regular business, since its involvement served a business purpose of its own and, finally, since it was fully aware of a vital fact—the lapse of the policy—unknown to the plaintiff, we hold that it was under a duty to disclose that fact." (*Ibid.*, fn. omitted.)

Here the only fact about which Petersen contends SSC should have advised her was the speculative nature of the Investestate and Western Reserve stocks. Under the Restatement Second of Torts, section 551 and *Wells* v. *John Hancock*, SSC might have had a duty to advise the Petersens about the nature of the stocks, but only if SSC knew Guildcor had failed to do so; a defendant has no duty to speak under the Restatement or *Wells* v. *John Hancock*, unless the defendant is aware the plaintiff is ignorant of some important fact.

The record here does not contain any evidence which would suggest SSC was aware Smith and Guildcor had failed to fully advise the Petersens about the Investestate and Western Reserve stocks. Indeed, the unrebutted evidence presented by SSC demonstrates its lack of such knowledge. In addition to presenting an agreement under which Guildcor assumed the responsibility to advise the Petersens about the suitability of their investments, SSC also presented the trial court with a declaration in which one of its officers declared that no one at SSC knew anything about the Petersens or their investment goals and desires, and that, consistent with its agreement with Guildcor, SSC had a company policy never to provide any advice to customers such as the Petersens.

According to the officer's unrebutted declaration, the only information SSC had about the Petersens was set forth in the account instruction sheet, the account authorization form and the margin agreement.[8] None of those documents suggests Guildcor failed to perform its disclosure responsibilities.

In sum then the record here establishes as a matter of law that SSC had no duty to disclose either under *Twomey* and *Duffy* or even under the more general principles set forth in the Restatement. Accordingly it cannot be held liable for its failure to disclose material information to the Petersens about their investments.[9]

Judgment affirmed.

Nares, J., and Lim, J.,* concurred.

---

[8] SSC's lack of knowledge may be established on a motion for summary judgment. (Code Civ. Proc., § 437c, subd. (e); see also *Overland Plumbing, Inc.* v. *Transamerica Ins. Co.* (1981) 119 Cal.App.3d 476, 483 [174 Cal.Rptr. 1] [where credibility of declarant is only issue raised in opposition to motion for summary judgment trial court has discretion to grant motion].)

[9] Having determined SSC is not liable either on an ostensible agency theory or for breach of fiduciary duty, we do not reach the alternative argument, raised by SSC in the trial court, that Petersen's claims are barred by the statute of limitations.

* Assigned by the Chairperson of the Judicial Council.