[No. 8116-1-I.  Division One.  May 26, 1981.]

LEO J. SHERRY, *Appellant,* v. ROBERT J. DIERCKS, ET AL, *Respondents.*

434

*Edward D. Campbell,* for appellant.

*Evan E. Inslee,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

This is an appeal from a judgment dismissing the plaintiff's case in a legal malpractice action.

The plaintiff is Leo J. Sherry, who will be referred to as the client. He brought this action against his former attorney, Robert J. Diercks, and the partners in the Seattle law firm of Foster, Pepper and Riviera, in which Mr. Diercks was then an associate and is now a partner. For convenience, we will refer to Mr. Diercks as though he were the sole defendant.

The client is a ground test operations engineer for the Boeing Company. He has in the past invested in the stock market. He has also traded extensively in the commodities market. This litigation has its inception in the client's com-

modities market dealings.

As the evidence in the case underscores, commodities speculation is not for the fainthearted but is one of the riskiest financial activities legally available to the general public. Commodity futures trading takes place in futures exchanges. One's wits determine success or failure and that success or failure can be striking indeed.

The client, Mr. Sherry, was a commodity trader on his own behalf in the early 1970's. Through a series of different brokers, he had speculated in silver, cotton, pork bellies, cattle and livestock. In 1970, he opened an account with the brokerage firm of Bache & Company (now Bache, Halsey, Stuart, Inc.), hereinafter referred to as the broker, and subsequently purchased stock and futures contracts through that firm. After returning from several years abroad, the client resumed trading with Bache. On the tip of a friend, he invested in the potato futures market in the fall of 1975. As with most of the client's commodities trading, his account with Bache was a "nondiscretionary" account, that is, the client personally directed his broker in making all purchases and sales of futures contracts for his account. By contrast, a "discretionary" account is one where the purchases and sales are left to the broker's discretion. Everything in the record suggests that the client was well aware of the financial risks he ran in his commodity futures trading.

The client's trading in potato futures was ultimately unsuccessful. He ended up owing his broker $16,715 on his commodity futures brokerage account, which he did not pay apparently because he did not have it. When he was eventually sued for the balance owing on his account, he sought the legal services of Mr. Diercks.

As a result of his losses, the client was on the verge of bankruptcy. The attorney and client discussed bankruptcy and also the possibility of defending against the broker's lawsuit. The attorney agreed to defend against the broker's suit and to file a counterclaim against the broker, with his fee to be paid out of the counterclaim proceeds, if any. The

attorney appeared on behalf of the client, filed the necessary pleadings and proceeded to investigate a number of potential defenses and bases for the counterclaim. The attorney ultimately concluded that the case could not be successfully defended and that the client owed the money for which his broker was suing.

The attorney and client discussed this the week prior to the scheduled jury trial. In the presence of the client, and with the concurrence of the client or at least without his objection, the attorney telephoned the broker's attorney and informed him that there would be no trial and that a default could be taken. Shortly thereafter differences arose between the client and the attorney, the details of which need not be chronicled here. Suffice to say, the broker obtained an order of default and a judgment against the client for its $16,715 claim plus interest and the client went to another attorney.

The client's new attorney sought to set aside the order of default and judgment. When he was unsuccessful in doing so, the client brought a pro se action in federal district court against the broker, certain of its employees and state officials under 42 U.S.C.A. § 1985 alleging that he had been deprived of his civil rights. The court dismissed the action and at the time of this trial the case was on appeal. Acting through his new counsel, the client also brought the present legal malpractice action against his former attorney.

In the legal malpractice action, the trial court granted the attorney's challenge to the sufficiency of the client's evidence and dismissed the case. The client's appeal to this court presents two issues.

## ISSUES

ISSUE ONE. To recover in a legal malpractice action based on an attorney's failure to defend the client's case, does the client have the burden of proving that he would have prevailed in the underlying action?

ISSUE TWO. Did the client prove that he had any meritorious defenses to the broker's claim for monies owed?

## DECISION

ISSUE ONE.

CONCLUSION. To establish the element of proximate causation in a legal malpractice action based on the claim of an attorney's failure to defend, the client must establish in a "suit within a suit" that if the action had been defended, the client would have prevailed or achieved a better result in that action.

■ The elements of a legal malpractice action are: (a) the existence of an attorney–client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client. *Hansen v. Wightman,* 14 Wn. App. 78, 88, 538 P.2d 1238 (1975).

As to the burden of proof in such cases, we further held in *Hansen* that "[t]he burden of proving that an attorney has been negligent or failed to act with proper skill and that damages resulted therefrom is on the plaintiff client" and that "[l]ikewise, the burden is on the plaintiff to show that the negligence of the attorney was a proximate cause of the client's damage." *Hansen v. Wightman, supra* at 88.

The client's claim of legal malpractice in this case is based on the following theories or a combination thereof: the attorney's failure to appear at trial and defend the client; the attorney's failure to pursue or establish meritorious defenses; the attorney's wrongful withdrawal from the case; and the attorney's failure to obtain a continuance of the trial to enable the defendant to retain the services of another attorney. All of the client's theories sound in tort.

■ Causation is the sometimes fragile thread which must connect the concept of fault to the reality of damage. The principles and proof of causation in a legal malpractice action do not differ from an ordinary negligence case. *Ward v. Arnold,* 52 Wn.2d 581, 584, 328 P.2d 164 (1958). To establish a cause of action under any of the mentioned theories of recovery, the client had to establish that the claimed negligence of the attorney was a proximate cause of

his damage.

■ In this case the foregoing rules required that the client show that if the broker's action against him had been defended, the client would have prevailed or at least would have achieved a better result. As one text summarizes the law in this regard,

> The final, and very common, issue is whether the attorney's negligence caused damage. Thus, if a client would not have succeeded in the defense of an action or been subjected to a lesser judgment, the attorney's negligence could not have caused damage.

(Footnote omitted.) R. Mallen & V. Levit, *Legal Malpractice* § 331, at 413 (1977). *Accord, Martin v. Nichols,* 110 Wash. 451, 453–54, 188 P. 519 (1920). For the client to recover against the attorney, therefore, he first had to establish that he had a defense to his broker's action against him.

The client argues, in effect, that once he showed that the attorney did not defend the client, the burden of proof should shift to the attorney to justify the entry of the default judgment. That is not the law of this state. We are not persuaded that there is any logical justification to vary the foregoing well established principles of proximate causation and burden of proof in such cases.

ISSUE TWO.

CONCLUSION. The client failed to show that he had a meritorious defense to the broker's claim for monies owed. Violation of industry suitability standards by a commodity futures broker is not an independent basis for liability under the Commodity Exchange Act, 7 U.S.C.A. § 6b; and under the common law a commodity futures broker has no duty to determine a customer's suitability where, as here, the customer's account is nondiscretionary.

Although a claim based on federal securities law must be brought in federal court under 15 U.S.C.A. § 78aa, that law may be asserted as a defense to a claim brought in state court. *Shareholders Management Co. v. Gregory,* 449 F.2d 326 (9th Cir. 1971); *Birenbaum v. Bache & Co.,* 555 S.W.2d

513 (Tex. Civ. App. 1977). *See also Herron Northwest, Inc. v. Danskin,* 1 Wn. App. 818, 819, 464 P.2d 435, *rev'd on other grounds,* 78 Wn.2d 500, 502, 476 P.2d 702 (1970). For the purposes of the present case, we assume that a defense based on the Commodity Exchange Act may also be asserted in state court.

The client appears to contend that he was not "suitable" to engage in commodity futures trading because of a lack of financial resources. The client argued in the trial court that he had a defense to the broker's suit under the so-called "suitability doctrine" based on rules and regulations pertaining to securities and commodities exchanges. The trial court ruled that he did not. We agree.

The question of whether or not civil liability may be imposed on securities brokers for violating the rules of the New York Stock Exchange (NYSE), other regional stock exchanges or the National Association of Securities Dealers (NASD) has given rise to numerous and conflicting decisions in the federal courts. NYSE Rule 405 imposes a duty on securities brokers to use "due diligence to learn the essential facts relative to every customer",[1] and NASD rules provide that a broker has a duty to recommend to a

---

[1] New York Stock Exchange (NYSE) Rule 405 provides in pertinent part:

Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

(2) Supervise diligently all accounts handled by registered representatives of the organization.

(3) Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer, provided, however, that in the case of branch offices, the opening of an account for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable time be approved by a general partner, a principal . . .

This rule is as quoted in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 133 n.9 (8th Cir. 1979).

customer only securities which are suitable for that customer's account based on facts disclosed by the customer as to his other security holdings, financial situation and needs.[2]

The law on this subject is generally referred to as the "suitability doctrine", which in the context of the dispute before us refers to the extent of the broker's responsibility to a customer who trades in securities that may be "unsuitable" for the customer. The legal effect of the various rules commonly discussed under the broad term "suitability doctrine" depends in large part on judicial interpretation of the purpose of such rules. Some authorities have stated that the rules are merely designed to result in disciplinary action by an exchange against brokers while others have held that they are substitutes for Securities and Exchange Commission regulations and are impliedly intended to impose civil liability on the broker. *See* Nichols, *The Broker's Duty to His Customer Under Evolving Fiduciary and Suitability Standards,* 26 Buffalo L. Rev. 435, 442 (1977); E. Brodsky, *Securities Litigation,* ch. 5 (1974).

Some federal courts have held that a violation of the suitability rules may give rise to a private right of action by a customer against a broker pursuant to federal securities law. Liability has not been imposed, however, unless a violation of the antifraud provisions of section 10b of the Securities Act of 1934, 15 U.S.C.A. § 78j has been shown. *See, e.g., Hecht v. Harris, Upham & Co.,* 283 F. Supp. 417, 430 (N.D. Cal. 1968), *aff'd as modified,* 430 F.2d 1202, 1209 (9th Cir. 1970); *Carras v. Burns,* 516 F.2d 251 (4th Cir. 1975); *see generally* Nichols, *supra.*

---

[2] "The National Association of Security Dealers Rules of Fair Practice, Article III, § 2, *CCH NASD Manual* ¶ 2152, Art. III, § 2, provides:

"In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 133 n.10 (8th Cir. 1979).

■ The nondiscretionary commodity account involved here is not a "security", however, but is governed by the Commodity Exchange Act, 7 U.S.C.A. §§ 1 *et seq., E.F. Hutton & Co. v. Burkholder,* 413 F. Supp. 852 (D.D.C. 1976). It is not settled if a customer has a private right of action under that statute. *See, e.g., Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 622 F.2d 216 (6th Cir. 1980), *cert. granted,* 451 U.S. 906, 68 L. Ed. 2d 293, 101 S. Ct. 1971 (1981). Even assuming a customer's right to sue a broker under the Commodity Exchange Act, however, the courts have refused to imply broker liability based solely on a violation of NYSE or NASD rules. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 134 (8th Cir.), *cert. denied,* 444 U.S. 838, 62 L. Ed. 2d 50, 100 S. Ct. 76 (1979); *Hofmayer v. Dean Witter & Co.,* 459 F. Supp. 733, 740 (N.D. Cal. 1978). Therefore, unless a customer proves a violation of the antifraud provisions of the Commodity Exchange Act, 7 U.S.C.A. § 6b, recovery of damages against a broker is not an available remedy. *See generally* Hudson, *Customer Protection in the Commodity Futures Market,* 58 B.U. L. Rev. 1 (1978).

The decision of an administrative law judge of the commodity futures trading commission in a $382 reparations case, *Avis v. Shearson Hayden Stone Inc.,* [1977–1980 Transfer Binder] 2 Comm. Fut. L. Rep. (CCH) ¶ 20,738 (January 11, 1979), relied on by the client, is not in point. That case involved a discretionary account and the elements of fraud were also established. The client does not contend that his broker committed fraud in its dealings with him. He did not plead fraud, argue it in his brief or propose instructions on a fraud theory. Therefore, under the Commodity Exchange Act, 7 U.S.C.A. §§ 1 *et seq.,* the client did not sustain his burden of establishing a prima facie defense to the broker's suit based on a violation of any suitability rules.

■ The client also claims that at common law a violation of the suitability standard would have been a valid defense to the broker's action against him. In support of his

argument, he cites *Anderson v. Knox,* 297 F.2d 702 (9th Cir. 1961), *cert. denied,* 370 U.S. 915, 8 L. Ed. 2d 498, 82 S. Ct. 1555 (1962) and *Twomey v. Mitchum, Jones & Templeton, Inc.,* 262 Cal. App. 2d 690, 69 Cal. Rptr. 222 (1968). In both of those cases the customer relied upon the advice of the broker or agent and fraud was established. That is not the case here. *Twomey* clearly recognized that distinction. *Twomey v. Mitchum, Jones & Templeton, Inc., supra* at 242.

A broker whose client maintains a nondiscretionary account has no common law duty to ascertain the suitability of a customer to make investments. *See* N. Wolfson, R. Phillips & T. Russo, *Regulation of Brokers, Dealers and Securities Markets* § 2.08 (1977); 12 Am. Jur. 2d *Brokers* § 122 (1964); *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F. Supp. 951 (E.D. Mich. 1978).

■ Here the trial court sustained the attorney's challenge to the sufficiency of the evidence at the close of the client's case and dismissed the case. For the purposes of ruling on such a motion, the truth of the nonmoving party's evidence and all reasonable inferences therefrom will be deemed admitted, and the evidence will be interpreted in the light most favorable to that party. *Moyer v. Clark,* 75 Wn.2d 800, 803, 454 P.2d 374 (1969). So construing it, the client had no defense to the broker's suit as a matter of law. Therefore, he also failed to prove the necessary element of proximate causation in his legal malpractice claim. The trial court did not err in granting the attorney's challenge at the close of the client's case.

To the extent that the client's brief suggests other possible claims of error, we consider them to be without merit.

Affirmed.

SWANSON and DURHAM, JJ., concur.

Reconsideration denied June 24, 1981.

Review denied by Supreme Court September 25, 1981.