Michael S. WASNICK; Marcy Wasnick; Chief Construction Company, Plaintiffs–Appellees, Cross–appellants,

v.

REFCO, INC., Defendant–Appellant, Cross-appellee.

Nos. 88–4346, 88–4403.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 5, 1989.

Submitted Dec. 13, 1989.

Memorandum Filed Feb. 14, 1990.

Decided Aug. 15, 1990.

Steve W. Berman, Betts, Patterson & Mines, Seattle, Wash., for plaintiffs-appellees, cross-appellants.

Walter C. Greenough, Schiff Hardin & Waite, Chicago, Ill., for defendant-appellant, cross-appellee.

Before WALLACE, PREGERSON and NELSON, Circuit Judges.

## ORDER

The memorandum disposition filed February 14, 1990, 896 F.2d 556, is redesignated as an authored opinion by Judge Nelson.

## OPINION

NELSON, Circuit Judge:

Plaintiffs-appellees and cross-appellants Michael S. Wasnick, his wife, Marcy Wasnick and his company Chief Construction Co. (Wasnick) sued defendant-appellant and cross-appellee Refco, Inc. (Refco) for Mi-

chael Wasnick's losses in commodity trading as a client of Refco and ContiCommodity Services (Conti) which was purchased by Refco. Refco is a commodity brokerage firm. Wasnick alleges that he was unsuitable to trade and Refco should have warned him or prevented him from trading. The case involved two claims, one under section 4b of the Commodity Exchange Act (CEA) and one for negligence under common law. After a bench trial, the district court found that Refco's actions did not reach the level of fraud under section 4b. The court did find that Refco was negligent and awarded damages to the plaintiff on this claim. It refused to toll the statute of limitations and so limited damages to post 1984. It also found that Refco had only assumed Conti's liabilities post 1984.

We have jurisdiction under 28 U.S.C. section 1291. We affirm the dismissal of the section 4b claim because a finding of negligence does not impose liability under the CEA. However, the district court improperly found that brokers have a duty to stop trading for clients they know to be unsuitable. No such duty exists in the common law of Washington. Therefore, we reverse the district court's judgment for the plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND

For thirty of the seventy-nine months between November 1979 and May 1986 appellant Wasnick traded in commodity futures with Conti and Refco, which purchased Conti in 1984. He also traded with five other brokerage companies during 1981 to 1985 and lost money with each firm.

During the trading at issue in this case, Wasnick's account with Refco was a non-discretionary account, that is, Wasnick personally directed his broker to make specific trades.[1] Although he occasionally would profit, he generally lost substantially. His

trading followed a pattern; he would start to get behind and then react with a large number of very rapid trades. He frequently made day trades in many different commodities. From 1979 to 1986 he lost roughly $1,445,000 at Refco and Conti.

After Wasnick's last account was closed in May 1986, Refco sued Wasnick to recover a $100,000 debit balance in his account. On November 18, 1988 Wasnick filed this lawsuit seeking to recover all of his trading losses on the grounds that he was unsuitable to trade.

After a bench trial the district court denied Wasnick's claim under section 4b of the CEA on the ground that Refco had not acted with scienter. The court entered judgment for Wasnick on the negligence claim finding that Refco knew Wasnick was emotionally unsuitable to trade. The court held that industry standards required that if a customer is clearly not suitable and the broker knows it, the broker must not accept the person for trading. The court also found that Wasnick was fifty percent contributorily negligent. The trial court refused to impose successor liability on Refco for Wasnick's trading at Conti and refused to toll Washington's three-year statute of limitations for Wasnick's negligence claim. As a result of these rulings the court awarded $476,142 in damages to Wasnick.

Refco timely appealed the court's finding of negligence, contending that there was no duty under the law and that the court's factual findings were in error. Wasnick filed a cross-appeal arguing that the trial court misapplied the law on the section 4b claim and that the court should have tolled the statute of limitations and found successor liability.

## DISCUSSION

### I. Commodity Exchange Act

The district court rejected Wasnick's section 4b claim because it found that Refco

---

1. On occasion Wasnick had a discretionary account, where the purchases and sales were left to the broker's discretion. At those times his accounts were profitable. Wasnick is asserting no breach of duty during the periods when he

had a discretionary account. Thus, this opinion only discusses a commodity broker's legal responsibility to a client when the client has a nondiscretionary account.

did not have the requisite state of mind. "The state of mind must be one of actual knowledge or recklessness as to the deception that the defendant is practicing." *Wasnick v. Refco*, No. C87–308(C)WD at 4 (W.D.Wash. Aug. 24, 1988) (Transcript of oral opinion). Wasnick argues that the district court's interpretation of the CEA is incorrect.

### A. Standard of Review

■ The standard for liability under the CEA is a legal question. We review legal issues *de novo*. *United States v. Gatto*, 763 F.2d 1040, 1044–45 (9th Cir.1985). A district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989).

### B. Liability under the CEA

■ Section 4b renders it unlawful "to cheat or defraud" or "willfully to deceive" any person in regard to any commodity contract in interstate commerce. 7 U.S.C. § 6b (1988). Section 4b "clearly require[s] that [a person's] acts be done with knowledge of their nature and character." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 283 (9th Cir.1979). Mere negligence, mistake, or inadvertence fails to meet section 4b's scienter requirement. *Drexel, Burnham Lambert Inc. v. Commodity Futures Trading*, 850 F.2d 742, 748 (D.C.Cir.1988). "[A] willful violation of the section requires an intentional act or careless disregard for the statutory requirement." *Savage*, 611 F.2d at 283; *Dohmen–Ramirez v. Commodity Futures Trading Comm'n*, 837 F.2d 847, 857 (9th Cir.1988).

■ The lower court found that "the facts do not justify a finding of fraud." *Wasnick*, transcript of oral opinion at 5. Refco made no affirmative false representations. "[T]hey did not intend to defraud, or willfully deceive, or act with the other culpable states of mind required by *Savage*. What they did was to act unreasonably and carelessly in their dealings with Mr. Wasnick. Caught up in the daily pressure and hurry of a fast-moving and competitive business, they failed to give enough thought to the well-being of their customer." *Wasnick v. Refco*, No. C87–308(C)WD, order at 8 (W.D.Wash. Oct. 11, 1988) (order on post-trial motions). Based upon these facts, the court correctly held that Refco lacked the requisite knowledge to commit fraud in violation of section 4b.[2]

Wasnick actually disagrees with the lower court's finding of fact that Refco did not commit fraud and had no intention to cheat or deceive, not with the lower court's analysis of the law. This finding of fact, however, is well supported by the record. Therefore, we affirm the lower court's dismissal of Wasnick's Commodities Exchange Act claim.

### II. Negligence

Although finding no violation of the CEA, the district court found that Refco acted negligently under the common law. The judge found that under industry standards

[a]s to a new account, a broker, … has the duty to exercise reasonable care to reject a customer who is clearly unsui-

---

**2.** Wasnick also argues that Refco violated the CEA because the act of encouraging and soliciting a client known to be unsuitable is itself a violation of the CEA. There is no case law to support this theory. "[B]oth courts and the Commodity Futures Trading Commission have determined that there is no suitability rule under the Commodity Exchange Act." *Kearney v. Prudential–Bache Securities Inc.*, 701 F.Supp. 416, 430 (S.D.N.Y.1988); *Sherry v. Diercks*, 29 Wash.App. 433, 628 P.2d 1336, 1339, *rev. denied*, 96 Wash.2d 1003 (1981). Wasnick cites *Phacelli v. Conti Commodity Services, Inc.*, Comm.Fut.L. Rep. (CCH) ¶ 23,250 (CFTC Sep. 5, 1986) for support. *Phacelli* is not binding on this court. More importantly, it repeatedly holds that there is "no rule of suitability governing the commodity broker-customer relationship." *Id.* at 32,673. In the majority opinion the court found that in some cases conduct amounting to "overreaching" could be equivalent to fraud. In the concurrence the Commissioner also stated that in extreme cases the customer's lack of suitability would constitute a material fact giving rise to a fraud claim. In this case, however, the lower court specifically found that Refco's behavior did not reach the level of fraud.

table for trading, and as to an existing account, if the broker knows that the customer is clearly not suitable for trading, there is a duty to so advise the customer and, if necessary, to cease trading.

*Wasnick*, transcript of oral opinion at 7.

The judge stated that there was no duty to monitor an account but "the duty is to act with reasonable care when the broker actually knows that customer is unsuitable for commodities futures trading." *Wasnick*, transcript of oral opinion at 9. The trial court found in the instant case that "Refco actually possessed, without having to do any monitoring, the knowledge that Mr. Wasnick was unfit" and was therefore negligent in allowing him to continue trading. *Wasnick*, transcript of oral opinion at 13.

Refco, on cross appeal, argues that brokers do not have a duty under Washington state or federal law to stop a client from making unwise trades. The district court also erred, according to Refco, in its findings of fact that industry suitability standards exist, that Wasnick was unsuitable and that Refco knew of his unsuitability.

### A. Standard of Review

■ De novo review is applied to a trial court's determination of the standard of conduct or duty utilized in a negligence finding. Questions of fact underlying negligence holdings are subject to the clearly erroneous standard of review. *Hollinger v. United States*, 651 F.2d 636, 639 (9th Cir.1981); *Miller v. United States*, 587 F.2d 991, 994 (9th Cir.1978).

### B. Duty of a Broker

■ Whether Refco's conduct was negligent is a matter of state law. In *Sherry v. Diercks*, 29 Wash.App. 433, 628 P.2d 1336, *rev. denied*, 96 Wash.2d 1003 (1981), the Washington Court of Appeals considered the extent of a commodity broker's responsibility to a customer who is not suitable to trade. The *Sherry* court held that there is no "suitability doctrine" under Washington law. "[U]nder the common law a commodity futures broker has no duty to determine a customer's suitability where, as here, the customer's account is nondiscretionary." *Id.* 628 P.2d at 1339.[3] Although the court did not discuss internal brokerage firm rules it opined that there is no broker liability based solely on a violation of NYSE or NASD rules. "[U]nless a customer proves a violation of the antifraud provision of the Commodity Exchange Act, 7 U.S.C.A. § 6b, recovery of damages against a broker is not an available remedy." *Id.* at 1340.

Other courts that have discussed whether, outside fraudulent conduct, a broker has any obligation to stop trading for an emotionally or financially unsuitable client also have held that there is no such duty. *See, e.g., Phacelli v. Conti Commodity Serv's, Inc.,* Comm.Fut.L.Rep. (CCH) ¶ 23,250, 32,674 (CFTC Sep. 5, 1986)("[A] customer who makes a knowing and meaningful election to undertake the risks of commodity futures trading cannot recover his losses by claiming under Section 4b that his account executive should have warned him that he was unsuitable for such a risk."); *J.E. Hoetger & Co. v. Ascencio,*

---

**3.** Wasnick has tried to distinguish the instant case from *Sherry* by arguing that *Sherry* holds that there is no duty to determine a customer's suitability, while the judge in this case only found a duty when the broker knew the customer was unsuitable. This is merely a semantic distinction.

In *Sherry,* the plaintiff Leo Sherry claimed that he was financially unsuitable to trade. The brokerage firm certainly knew Sherry's financial situation before they accepted his account. At issue in the *Sherry* case was not whether the firm was required to know Sherry's financial situation but whether the firm was required to make a judgment that Sherry was unsuitable based on that financial information. The court

in *Sherry* decided there was no such requirement. This is exactly the situation in the instant case. Refco did not "know" Wasnick was unsuitable. It knew his trading patterns and that he frequently lost money. From that factual information the lower court decided Refco must make the judgment that Wasnick was unsuitable.

The lower court couched its reasoning in actual knowledge language, but in fact the court decided Refco had the responsibility to determine that Wasnick was unsuitable and to stop him from trading based on its knowledge of the trades Wasnick made and the losses he incurred. This is precisely the obligation that Refco does not have under Washington law.

572 F.Supp. 814 (E.D.Mich.1983) (holding that there was no authority for a suitability claim resting on a violation of internal brokerage firm rules); *Leib v. Merrill Lynch, Pierce, Fenner & Smith*, 461 F.Supp. 951 (E.D.Mich.1978), *aff'd without opinion*, 647 F.2d 165 (6th Cir.1981); *Kearney v. Prudential–Bache Securities, Inc.*, 701 F.Supp. 416, 429 (S.D.N.Y.1988).

Because Washington state law finds no duty by brokers to prevent emotionally or financially unsuitable clients from trading on nondiscretionary accounts, we conclude that judgment for the plaintiff was improper. Accordingly we reverse the district court on the negligence claim.[4]

### CONCLUSION

The district court's judgment in favor of Refco on the CEA claim is AFFIRMED; the court's judgment for Wasnick on the negligence claim is REVERSED.

---

**4.** Because we find no negligence as a matter of law, it is unnecessary to determine whether the district court erred in its findings of fact. We also do not need to reach the issue of the appropriate statute of limitations or whether Refco assumed all of Conti's accounts.