**UNITY HOUSE, INC., Plaintiff,**

v.

**NORTH PACIFIC INVESTMENTS, INC., et al., Defendants.**

Civil No. 93–00764 ACK.

United States District Court,
D. Hawai'i.

Jan. 16, 1996.

Randall N. Harakal, Shigemura & Harakal, Honolulu, HI, Robert Carson Godbey, Gilbert & Jeynes, Honolulu, HI, William A. Sokol, Sandra Rae Benson, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, for Unity House, Inc.

Samuel P. King, Jr., Honolulu, HI, Steven J. Thomas, Wallace M. Rudolph, Law Offices of Steven J. Thomas, Enumclaw, WA, for North Pacific Investments, Inc., Stafford Mew.

Kevin S.W. Chee, Keith K. Kato, Phil Y. Kouyoumdjian, Chee & Markham, Honolulu, HI, for Jack M.K. Gonzales.

Jack M.K. Gonzales, Honolulu, HI, pro se.

James E. Duffy, Jr., Lee T. Nakamura, Fujiyama Duffy & Fujiyama, Honolulu, HI, Colbert M. Matsumoto, Matsumoto LaFountaine & Chow, Honolulu, HI, for James K. Tam.

Charles E. Andrews, Chicago, IL, pro se. Andrews & Associates, Chicago, IL, pro se.

Margaret Ann Leong, Law Offices of Jay T. Suemori, Honolulu, HI, for Roberta Lea Kapioalani Cabral, Individually dba R. Cabral & Associates, Defalco Pacific Advertising, a subsidiary of Delfalco West Advertising, Island West Extraordinaire, and Sky Television, Inc.

Mark D. Bernstein, Honolulu, HI, for Michael Chatzky, Individually dba Chatzky & Associates.

Margaret E. Di Donna, Ashford & Wriston, Honolulu, HI, Joan M. Kubalanza, Scott E. Early, Nehad S. Othman, Foley & Lardner, Chicago, IL, for First Commercial Financial Group.

Leroy E. Colombe, Trevor A. Brown, Chun Kerr Dodd & Kaneshige, Honolulu, HI, for Fidelity Brokerage Services, Inc.

Bruce L. Lamon, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Charles Schwab, Inc.

William A. Sokol, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, Robert Carson Godbey, Gilbert Jackson & Godbey, Honolulu, HI, for Anthony Rutledge, Orlando Soriano, Roderick Rodriguez, James Walter, Gilbert Farias.

Calvin E. Young, Ayabe Chong Nishimoto Sia & Nakamura, Pauahi Tower, Honolulu, HI, for Reynaldo D. Graulty.

### ORDER GRANTING DEFENDANTS CHARLES SCHWAB & CO., INC. AND FIDELITY BROKERAGE SERVICES, INC.'S MOTIONS FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### BACKGROUND

Defendants Charles Schwab & Co., Inc. ("Schwab") and Fidelity Brokerage Services,

Inc. ("Fidelity") have filed motions for summary judgment against plaintiff Unity House, Inc. ("Unity House"), contending that they are so entitled because the trading accounts at issue opened at defendants' branches in Washington state by North Pacific Investments, Inc. ("NPI"), allegedly with monies misappropriated from Unity House, were nondiscretionary. Defendants contend that because they had no control over trading decisions by NPI, and no knowledge that NPI was investing on behalf of Unity House, they owed Unity House no duties supporting any claims against them.

On January 9, 1996, the Court heard defendants' motions. Defendants and plaintiff appeared through counsel. Upon considering the papers submitted by the parties, the arguments of counsel and the record, the Court hereby GRANTS both defendants' motions for summary judgment. The Court further DENIES plaintiff's request for a Rule 56(f) continuance.

### FACTS

The Second Amended Complaint alleges that various officers and employees[1] of defendant NPI, a Washington corporation, induced Unity House to participate in a putative international banking transaction described as "prime bank paper." This solicitation took place in Hawaii.

Defendant Charles Andrews was the president and owner of defendant Andrews & Associates (collectively, "Andrews"), a commodities brokerage firm located in Illinois. Andrews is alleged to have assisted NPI in inducing Unity House to participate in the "prime bank paper" transaction by (1) vouching for NPI's ability to complete such a transaction; (2) assuring prospective investors and borrowers that "bank paper" would be provided; (3) causing a foreign bank account to be established for NPI; and (4) agreeing to negotiate and purchase the so-called prime bank instruments on behalf of NPI.

Accordingly, in January 1993, NPI, Andrews, and other defendants prepared a "Private Participation Agreement," pursuant to which Unity House was to take part in the "prime bank paper" transaction. Unity House executed the agreement. Andrews assisted in opening a Swiss bank account, into which Unity House transferred $10 million dollars for the limited purpose of the purchase and sale of the prime bank debt obligations.

Rather than investing the monies in the "prime bank paper" transaction, however, from February through April 1993, NPI and/or other defendants allegedly diverted monies from the Swiss bank account into NPI's bank account in Washington and then to a discretionary trading account with First Commercial Financial Group[2] and to trading accounts with Schwab and Fidelity, two discount brokerages. NPI lost a significant amount of money trading in its Schwab and Fidelity accounts.

### SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may

---

**1.** Including defendants Jack M.K. Gonzales, Rodney H.S. Kim and Roberta L.K. Cabral.

**2.** First Commercial was dismissed as a defendant for lack of personal jurisdiction by order filed November 1, 1995.

not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987).

■ Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.,* 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511.

■ The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence

and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

### DISCUSSION

The central issue in defendants' motions is whether the trading accounts with Schwab and Fidelity were discretionary or nondiscretionary. Defendants contend essentially that because the accounts were nondiscretionary, defendants owed no duties to Unity House and therefore Unity House can assert no claims against them.

Defendants also argue that (1) there is no private right of action for violations of NYSE and NASD rules; (2) Unity House's claims for churning must be dismissed because (i) defendants had no control over the accounts and (ii) there is no private right of action for churning under Section 15 of the Securities Exchange Act ("Act"); (3) Unity House has no standing to bring a private right of action under Section 10(b) of the Act because it was neither a "purchaser" nor a "seller" of securities; (4) there is no liability under Rule 10b–5 or common law for "aiding and abetting" securities fraud; and (5) defendants owed Unity House no fiduciary duties under any "constructive trust" theory.

In its opposition, Unity House argues that (1) there is a genuine issue whether the accounts were discretionary or nondiscretionary; (2) defendants are liable for common law negligence; and (3) defendants' violations of NYSE and NASD "know your customer" and "suitability" rules are "tantamount to fraud" in violation of Rule 10b–5. Because Unity House fails to address all of defendants' contentions, those not addressed will be deemed unopposed.

The Court first will consider those of defendants' contentions that are at least in part unopposed. The Court then will consider Unity House's arguments raised in its opposition.

### I. NO PRIVATE RIGHT OF ACTION FOR VIOLATION OF NYSE AND NASD RULES

■ Defendants contend, without opposition from Unity House, that there is no

private right of action for violation of NYSE and NASD rules. The Court agrees. *See In re VeriFone Securities Litig.*, 11 F.3d 865, 870 (9th Cir.1993) ("It is well established that violation of an exchange rule will not support a private claim."); *Carrott v. Shearson Hayden Stone, Inc.*, 724 F.2d 821, 823 (9th Cir. 1984) (no private right of action under NYSE "know your customer" Rule 405); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 678 n. 1 and 2, 681 (9th Cir.1980) (no private right of action under NYSE Rule 405 or NASD "suitability" rule). Accordingly, any claims based solely on violation of such rules are dismissed.

## II. *CHURNING*

■ "In order to establish a claim of churning, a plaintiff must show (1) that the trading in his account was excessive in light of his investment objectives; (2) that the broker in question exercised control over the trading in the account; and (3) that the broker acted with the intent to defraud or with the wilful and reckless disregard for the interests of his client." *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 821 (9th Cir.1980) (churning in violation of Rule 10b–5).

■ Defendants contend that Unity House's claims for churning in violation of Rule 10b–5 must be dismissed because they had no control over trading in the accounts. In light of the discussion in Section VI below, the Court agrees.

■ In addition, Unity House appears to assert claims for churning under Section 15(c) of the Act (15 U.S.C. § 78*o*(c)) and associated Rule 15c1–7(a). *See, e.g.*, Second Amended Complaint at ¶ 263. However, "no private right of action is to be implied under this section." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1313–14 (9th Cir.1982). Unity House cites no authority to the contrary. Accordingly, all claims for churning under Section 15(c) or Rule 10b–5 are dismissed.

## III. *STANDING UNDER SECTION 10(b)*

Defendants contend also that any claims under Section 10(b) of the Act or under Rule 10b–5 must be dismissed because Unity House was not a "purchaser" or "seller" of securities and therefore lacks standing.

■ Standing to sue under Section 10(b) or Rule 10b–5 is limited to purchasers and sellers of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975) (adopting rule in preference to a "shifting and highly fact-oriented" inquiry).

■ Here, Unity House alleges that NPI purchased and sold securities using money it had converted or misappropriated from Unity House. This however does not make Unity House a "purchaser" or "seller" under the Act. *See Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co. Inc.*, 770 F.Supp. 176, 180 (S.D.N.Y.1991) (employee of plaintiff stock transfer agent embezzled stock certificates and sold them through brokers; court dismissed suit against brokers on grounds that plaintiff was not purchaser or seller, stating that "[a] fraudulent change in ownership (e.g. embezzlement or conversion) does not alone constitute sufficient basis for finding a sale of securities"); *Sheldon Co. Profit Sharing Plan and Trust v. Smith*, 828 F.Supp. 1262, 1270 (W.D.Mich.1993) (plaintiff sued brokers for churning on basis of trades made by its investment adviser; court held "there could be no violation of section 10(b) and Rule 10b–5 because defendants were not direct participants in any securities transactions between plaintiffs and defendants").

Unity House argues in a footnote that it has standing to sue under Rule 10b–5 as a "constructive trustee."[3] *See* Opposition at 26 n. 10 (citing *Hackford v. First Security Bank of Utah, N.A.*, 521 F.Supp. 541 (D.Utah 1981) and *Norris v. Wirtz*, 719 F.2d 256 (7th Cir.1983)). These cases however involved not constructive trusts but *express* trusts. Moreover in *Norris*, the court found the plaintiff beneficiary properly was deemed a "purchaser or seller" because she

---

**3.** This appears to be a misstatement. In fact, Unity House appears to be arguing that it entrusted funds to NPI or defendants, in which case Unity House would be a "trustor" or "beneficiary" and NPI or defendants "trustees."

"had authority to make the investment decisions involving the securities sales in which the alleged misrepresentations were made." *Id.* at 260. And while in *Hackford* the court held the trust beneficiaries had standing under Rule 10b–5, *Hackford* is no authority for Unity House's propositions that here (1) Unity House was the beneficiary of a constructive trust which was created when NPI diverted its funds to NPI's accounts with defendants and (2) defendants (in addition or as opposed to NPI) were trustees of such a trust. Thus neither *Hackford* nor *Norris* is apposite. Accordingly, the Court finds that Unity House lacks standing to bring claims against defendants under Section 10(b) and Rule 10b–5.[4]

## IV. *AIDING AND ABETTING*

■■■■ Defendants contend, without opposition from Unity House, that Unity House may not maintain claims for "aiding and abetting" securities fraud either under Section 10(b) or under common law. The Court agrees. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* — U.S. —, —, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994) ("Because the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)."); *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 452 (7th Cir.1982) ("There is no tort of aiding and abetting under Illinois law or, so far as we know, the law of any other state ...."); *Nakamoto v. Hartley,* 758 F.Supp. 1357, 1366 (D.Haw. 1991) ("Hawaii courts have given no indication that on a fraud claim brought under Hawaii common law, a defendant may be held liable for aiding and abetting a fraud ....") (citing *Cenco*).[5]

## V. *CONSTRUCTIVE TRUST*

■■■■ Any claim by Unity House that it has standing under Rule 10b–5 under a constructive trust theory already has been discussed and rejected in Section III above. Defendants contend that any residual claim by Unity House under a constructive trust theory rests on the proposition that defendants owed a fiduciary duty to Unity House. Unity House cites no authority suggesting the existence of such a duty under the instant circumstances. As discussed in Section VI below, there is no genuine issue that defendants did not know that NPI had misappropriated and were trading with Unity House's funds or that defendants even were aware that Unity House existed. Accordingly, any claims by Unity House against defendants based on constructive trust are dismissed.

## VI. *NATURE OF ACCOUNTS*

■■■■ Defendants discount brokers contend that there is no genuine issue that the subject accounts were nondiscretionary—that is, NPI (the customer) decided on its own what trades to make; defendants merely executed the trades for NPI; defendants did not recommend trades; and defendants otherwise had no control over trading in the accounts. *See* Korbuszewski Decl. ¶¶ 2–5 (specifically refuting plaintiff's suggestion that "LPOA" notation on Schwab account application might indicate NPI conferred discretion on Schwab by giving it limited power of attorney) and Exh. A (Schwab LPOA form stating that "Schwab will not make, recommend, or review investment decisions or offer investment advice, nor is Schwab in any way responsible for supervising or monitoring

---

4. The Court notes that even assuming Unity House had standing under Rule 10b–5, it cannot show any material misrepresentations or omissions by defendants since, as discussed below in Section VII, defendants had no duty to attempt to ascertain if NPI's funds actually belonged to an unknown third party.

5. *Restatement (Second) of Torts* § 876(b) "accepts a [civil] doctrine with rough similarity to criminal aiding and abetting." *Central Bank of Denver, N.A.,* — U.S. at —, 114 S.Ct. at 1450;

*Restatement (Second) of Torts* § 876(b) (1977) ("[O]ne is subject to liability [for the tortious conduct of another] if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself.").

However, even assuming there existed aiding and abetting liability for fraud in Hawaii, Unity House would not survive summary judgment on this claim because it has submitted no evidence indicating that defendants knew that NPI was breaching a duty to it. *See, infra,* Section VI.

trading in Client's Account."); Schwab Concise Statement, Exh. F, Section 7 (signature section of Schwab account application states: "I acknowledge that Schwab does not give legal or tax advice, and will not advise concerning the nature or potential value of any particular security, transaction, or investment strategy."), Exh. G (Fishel Affid.), ¶ 3 (Schwab does not offer investment advice); Fidelity Concise Statement, Masiello Decl. ¶ 7 (NPI's Fidelity account was customer-directed account; Fidelity does not give advice regarding purchases or trades; customer trades by calling "800" number and placing trade); *see also Securities Indus. Ass'n v. Bd. of Governors of Federal Reserve Sys.*, 468 U.S. 207, 209 n. 2, 104 S.Ct. 3003, 3005 n. 2, 82 L.Ed.2d 158 (1984) ("Schwab is known as a 'discount' broker because of the low commissions it charges. Schwab can afford to charge lower commissions than full-service brokerage firms because it does not provide investment advice or analysis, but merely executes the purchase and sell orders placed by its customers."); *cf. Chee v. Marine Midland Bank, N.A.*, 1991 WL 15301, *4 (E.D.N.Y.1991) ("There is even greater reason to reject monitoring liability in the case of discount brokers whose admitted function is not to give advice so investors can save money on commissions.").

Defendants contend also that they had no knowledge that NPI was trading not with its own funds but with funds misappropriated from Unity House. *See* Schwab Concise Statement, Exh. G (Fishel Affid.), ¶¶ 4 (Schwab did not know that plaintiff had any claim to funds invested by NPI), Exh. I (Utigard–Rathbun Affid.), ¶ 3 (no knowledge NPI was investing plaintiff's money), Exh. J (Dowell Affid.), ¶ 4 (same) and Exh. K (Abernathy Affid.), ¶ 4 (same); Fidelity Concise Statement, Masiello Decl., ¶ 8 (no indication NPI was trading with funds other than its own).

In opposition, Unity House argues that determining whether an account is discretionary, nondiscretionary or some sort of hybrid is a "highly fact-intensive exercise" (*see* Opposition at 23), yet comes forward with no facts indicating that the accounts were discretionary. Instead, Unity House requests a Rule 56(f) continuance so that it hopefully may discover such evidence. As discussed below in Section IX, Unity House is not entitled to such a continuance.

Unity House's suggestion in the affidavits of Choi and Benson that alleged omissions or inconsistencies in certain of NPI's account application forms should have put defendants on notice that something was amiss is irrelevant to whether the accounts were discretionary or whether defendants had knowledge of Unity House. *Cf.* Schwab Concise Statement, Exh. F at 1 (Rude and Mew represented that NPI had annual income of $1 million and a liquid net worth of $11 million and that they were active traders with good to extensive investment knowledge and, between them, over 28 years investment experience) and Exh. I (Utigard–Rathbun Affid.) at ¶ 2 ("Mr. Rude impressed me as knowledgeable and professional, and I believed that he was a knowledgeable and sophisticated investor."); Fidelity Reply, at 13–14 and Exh. E (Fidelity ran D & B report on NPI; supposedly "missing" information on account forms either was not necessary or was already in Fidelity's possession).

Similarly, whether defendants noticed and/or investigated suspicious trading activity in the accounts is irrelevant and fails to raise a genuine issue as to discretion or knowledge. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987) (plaintiff must produce some "significant probative evidence tending to support the complaint"). Accordingly, the Court finds there is no genuine issue that the subject accounts were nondiscretionary and that defendants had no knowledge that NPI's funds in the accounts in fact had been misappropriated from Unity House.

## VII. *NEGLIGENCE*

Defendants contend that Unity House has no claim for common law negligence because inasmuch as the accounts were nondiscretionary, defendants had no duty to NPI (much less to Unity House) to prevent "unsuitable" trades. Defendants contend also that whether they had a duty to NPI or Unity House is governed by Washington law.

State substantive law, including conflicts law, governs pendent state law claims in federal court. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Beals v. Kiewit Pacific Co.,* 825 F.Supp. 926, 930 (D.Haw.1993) ("A federal court sitting in diversity must apply the substantive law of the forum state, including the forum state's choice-of-law rules.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)); 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4515 at 276 (1982) ("[T]he law to be applied in federal courts is not chosen by reference to the basis of jurisdiction....").

The Hawaii Supreme Court has stated that choosing which state's law to apply depends on "an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation." *Peters v. Peters,* 63 Haw. 653, 664, 634 P.2d 586 (1981) (citing *Restatement (Second) of Conflict of Laws* § 6 (1971)).

These interests and factors include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Restatement (Second) of Conflict of Laws* § 145 (1971) ("These contacts are to be evaluated according to their relative importance with respect to the particular issue."); *see also id.* at § 159 ("The applicable law [with respect to the duty owed to the plaintiff] will usually be the local law of the state where the injury occurred.").

Defendants contend that Washington law governs because (1) the accounts were corporate accounts listing NPI, a Washington corporation, as the sole account customer; (2) the accounts at issue were opened and maintained at defendants' branch offices in Washington; (3) the funds deposited into the accounts came from NPI's bank account at a Washington bank and were returned to NPI via a bank in Washington; (4) the individuals who handled the accounts on behalf of NPI—including defendants Stafford Mew, Derrick Mew and Morreon Rude—all were Washington residents; and (5) there was no information in the account documentation or elsewhere that put defendants on notice that any non-Washington entities were involved.

Defendants contend that under Washington law, defendants had no duty even to NPI (much less to Unity House) to monitor or prevent unsuitable trading in the nondiscretionary accounts. *See Wasnick v. Refco, Inc.,* 911 F.2d 345, 349 (9th Cir.1990) (" '[U]nder the common law a commodity futures broker has no duty to determine a customer's suitability where, as here, the customer's account is nondiscretionary.' ") (quoting *Sherry v. Diercks,* 29 Wash.App. 433, 628 P.2d 1336, 1339 (1981)).

Unity House does not dispute that it cannot recover under Washington law. Rather it contends instead that Hawaii law should apply, because (1) it is a Hawaii resident; (2) NPI actively engaged in soliciting investors in Hawaii; and (3) Hawaii has an interest in protecting its investing public. Unity House however cites no relevant Hawaii authority supporting its negligence claim but instead cites two California cases—*Duffy v. Cavalier,* 259 Cal.Rptr. 162 (1989)[6] and *Twomey v. Mitchum, Jones & Templeton, Inc.,* 262 Cal. App.2d 690, 69 Cal.Rptr. 222 (1968)—neither of which is apposite.

*Duffy* and *Twomey* however do not support the proposition that defendants had any duty to NPI (or Unity House) where the accounts were nondiscretionary. *See Petersen v. Securities Settlement Corp.,* 226 Cal.App.3d 1445, 1456, 277 Cal.Rptr. 468 (1991) ("Where, as here, [the] relationship is confined to the simple performance of transactions ordered by a customer or his investment advisor, the duties described in *Twomey* and *Duffy* do not arise.").[7] Thus,

---

6. This opinion has been vacated. *See* 262 Cal. Rptr. 195, 778 P.2d 549 (Cal.1989). The correct cite is *Duffy v. Cavalier,* 215 Cal.App.3d 1517, 264 Cal.Rptr. 740 (App.1989).

7. Unity House argued at the hearing that there are in fact three duties—"know your customer," "suitability," and "monitoring"—and that *Petersen* refers only to the "suitability" duty. The Court is not persuaded. Clearly the three duties

California law (and by plaintiff's argument Hawaii law) too would preclude Unity House's claim.

■ The Court finds that Washington law governs [8]—the events giving rise to the dispute occurred in Washington; the individuals involved were Washington residents; and Washington has a greater relationship to and interest in the dispute.

■ Alternatively, the Court finds that Hawaii courts would adopt the sensible rule discussed in *Wasnick, Sherry* and *Petersen* that securities brokers owe their customers (and any undisclosed third parties) no duties such as those described in *Twomey* and *Duffy* where the accounts are nondiscretionary. *Cf. also First Union Discount Brokerage Serv., Inc. v. Milos*, 744 F.Supp. 1145, 1156 (S.D.Fla.1990), *aff'd*, 997 F.2d 835 (11th Cir. 1993) (discount broker's "only obligation to the [customers] was to enter their orders within a reasonable period of time"); *Caravan Mobile Home Sales, Inc. v. Lehman Brothers Kuhn Loeb, Inc.*, 769 F.2d 561, 567 (9th Cir.1985) ("Normally the agency relationship created by a non-discretionary account arises when the client places an order and terminates when the transaction ordered is complete."); *Limbaugh v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 732 F.2d 859, 862 (11th Cir.1984) ("The affair entrusted to a broker who is to buy or sell through an exchange is to execute the order, not to discuss its wisdom.") (quoting *Robinson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 337 F.Supp. 107, 111 (N.D.Ala.1971)).

To hold otherwise would impose unjustifiably onerous burdens on brokers to (1) ascertain whether their immediate clients actually were handling funds for undisclosed third parties and (2) prevent trades by the immediate clients that are unsuitable *for the third parties*. *See Securities Indus. Ass'n v. Bd. of Governors of Federal Reserve Sys.*, 468 U.S. 207, 209 n. 2, 104 S.Ct. 3003, 3005 n. 2, 82 L.Ed.2d 158 (1984) ("Schwab is known as a 'discount' broker because of the low commissions it charges. Schwab can afford to charge lower commissions than full-service brokerage firms because it does not provide investment advice or analysis, but merely executes the purchase and sell orders placed by its customers."); *Chee v. Marine Midland Bank, N.A.*, 1991 WL 15301, *4 (E.D.N.Y. 1991) ("There is even greater reason to reject monitoring liability in the case of discount brokers whose admitted function is not to give advice so investors can save money on commissions.").

Indeed, as recognized by *Cumis Ins. Soc'y v. E.F. Hutton & Co.*, 457 F.Supp. 1380 (S.D.N.Y.1978), such a burden would be unwarranted even where the immediate client is an *investment advisor*, in which case the broker *knows* that the advisor is trading on behalf of another:

> [T]he burden of such a duty would be massive, as it would effectively require a broker to identify and to investigate each customer of each investment advisor, and to inquire about the various agreements that the advisors had made with their clients. This duty would be more than burdensome; it would be ethically unsound.

*Id.* at 1390. Such a proposed duty is "a good example of a plaintiff's deep-pocket theory that attempts to stretch the securities laws beyond recognition." *Id.* at 1382.

---

are linked. A broker obviously has to know its customer before it can determine whether the trades are "suitable" for that customer. Similarly a broker would not be able to determine the existence of "unsuitable" trading if it did not monitor the account.

8. At the hearing, Unity House asserted that the Schwab and Fidelity account agreements contained choice of law provisions designating the applicable law as that of California and Massachusetts, respectively, and that therefore the law of those states should apply. *See* Fidelity Motion, Exh. B at 3 ("This Agreement and its en-

forcement shall be governed by the laws of the Commonwealth of Massachusetts."); *cf.* Schwab Motion, Exh. D at 7 ("Interest on debit balances will be charged and compounded ... as permitted under the laws of the State of California."). However, Unity House was not a party to those agreements. Accordingly, whether there exist duties running from defendants to Unity House would seem not to be subject to those provisions. In any event, Unity House has cited (and the Court is aware of) no relevant Massachusetts law.

Accordingly, the Court dismisses Unity House's claims against defendants for common law negligence.

## VIII. *RULE 10b–5*

As discussed above in Section III, Unity House has no standing under Rule 10b–5. In addition, as discussed above in Section I, there is no private right of action for violation of NYSE and NASD rules. Unity House's argument that violation of exchange rules is "tantamount" to fraud under Rule 10b–5 thus fails for multiple reasons. Even assuming standing, Unity House may not circumvent the lack of a private right of action for violation of exchange rules simply by asserting that such violations are "tantamount" to fraud under Rule 10b–5. Accordingly, any claims under Rule 10b–5 are dismissed.

## IX. *RULE 56(f) CONTINUANCE*

 Unity House requests a Rule 56(f) continuance in order to conduct certain discovery relating to, among other things (1) alleged inconsistencies in account applications submitted by Stafford Mew and Morreon Rude and (2) surveillance and investigatory measures allegedly undertaken by defendants in response to excessive trading and losses in the accounts. *See* Choi Decl.; Benson Decl.

*Wright, Miller & Kane* describe the operation of Rule 56(f) as follows:

> [T]he rule will not be applied to aid a party who has been lazy or dilatory. Thus, a request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery. The courts will not delay a case to allow discovery when the discovery sought could have been instituted earlier, especially when there is no reason to believe that it will lead to a denial of the motion.

10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2741 at 553–54 (1983) (footnotes omitted); *see also VISA Int'l Serv. Ass'n v. Bankcard Holders of America,* 784 F.2d 1472, 1475–76 (9th Cir.1986) (request within trial court's discretion and properly denied

where clear that "evidence sought was almost certainly nonexistent or was the object of pure speculation").

The Court finds that Unity House has had sufficient time since the filing of this action on October 2, 1993 to conduct the discovery it proposes. Indeed, discovery from defendants was ongoing even before they were made parties to the action. *See* Schwab Reply, at 12 (plaintiff subpoenaed Schwab's account statements on December 28, 1994). Moreover, the Court finds there is no reason to believe that the proposed discovery would lead to a denial of defendants' motions. Unity House makes no showing that further discovery would lead to evidence either that defendants had control over NPI's trading in the accounts or that they knew that NPI was trading with Unity House's money.

The Court finds that such evidence is almost certainly nonexistent and purely speculative. *See, e.g.,* Korbuszewski Decl. ¶¶ 2–5 (specifically refuting plaintiff's suggestion that "LPOA" notation on Schwab account application might indicate NPI conferred discretion on Schwab by giving it limited power of attorney) and Exh. A (Schwab LPOA form stating that "Schwab will not make, recommend, or review investment decisions or offer investment advice, nor is Schwab in any way responsible for supervising or monitoring trading in Client's Account."); Schwab Concise Statement, Exh. F, Section 7 (signature section of Schwab account application states: "I acknowledge that Schwab does not give legal or tax advice, and will not advise concerning the nature or potential value of any particular security, transaction, or investment strategy."), Exh. G (Fishel Affid.), ¶¶ 3–4 (Schwab does not offer investment advice and did not know that plaintiff had any claim to funds invested by NPI), Exh. I (Utigard–Rathbun Affid.), ¶ 3 (no knowledge NPI was investing plaintiff's money), Exh. J (Dowell Affid.), ¶ 4 (same) and Exh. K (Abernathy Affid.), ¶ 4 (same); Fidelity Concise Statement, Masiello Decl. ¶¶ 7–8 (NPI's Fidelity account was customer-directed account; Fidelity does not give advice regarding purchases or trades; customer trades by calling "800" number and placing trade; and

no indication that NPI was trading with funds other than its own).

Accordingly, the Court denies Unity House's request for a Rule 56(f) continuance.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants Schwab and Fidelity's motions for summary judgment. There are no remaining claims against these defendants. The Court CERTIFIES this judgment as final as to defendants Schwab and Fidelity pursuant to Federal Rule of Civil Procedure 54(b) upon an express determination that there is no just reason for delay. The Court DIRECTS entry of judgment in favor of defendants Schwab and Fidelity.

IT IS SO ORDERED.