Filed 1/29/16  Enholm v. Cohen CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| TANYA ENHOLM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STEVEN R. COHEN et al.,<br><br>    Defendants and Respondents. | D067252<br><br>(Super. Ct. No.<br> 37-2013-00057742-CU-MM-CTL)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on January 12, 2016 be modified as follows:  On page six, in the second sentence, delete the words "fat cell" and replace them with the words "cell-enriched fat" so the sentence reads:

> Enholm asked Cohen whether the cell-enriched fat injections were related to her cancer.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

NARES, Acting P. J.

Copies to:  All parties

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TANYA ENHOLM, | D067252 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00057742-CU-MM-CTL) |
| STEVEN R. COHEN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.

L. Strauss, Judge.  Affirmed.

Tanya Enholm, in pro. per., for Plaintiff and Appellant.

Neil, Dymott, Frank, McFall, Trexler, McCabe & Hudson, Clark R. Hudson,

David P. Burke and Jonathan R. Ehtessabian for Defendant and Respondent.

Tanya Enholm employed a plastic surgeon, Steven R. Cohen, M.D., to replace

breast implants she received in 1978.  The procedure also involved injecting fat cells in

her chest wall to produce softer breasts.  Five months after surgery, Enholm was

diagnosed with uterine cancer.  She attributes her cancer to the fat cell injections.  She

sued Cohen, alleging he failed to obtain her informed consent, committed fraud, and the fat cell injections violated Food and Drug Administration (FDA) regulations.

Cohen moved for summary judgment, supported in part by a declaration from a plastic surgeon who stated (1) Cohen complied with the standard of care in obtaining Enholm's informed consent; (2) the procedure, which involved harvesting fat cells from one part of Enholm's body and injecting them in another, was not regulated by the FDA; and (3) it is medically impossible for the fat cell injections to have caused Enholm's uterine cancer.

Enholm submitted no opposing expert declaration. At the hearing, her lawyer conceded Enholm sustained no physical injury and "feels better now than she did before" surgery.

After the court granted summary judgment, Enholm fired her lawyer, began representing herself, and filed a motion for new trial. After the trial court denied her motion for new trial, she filed this appeal in propria persona.

We affirm the judgment. Enholm has not designated an adequate record to demonstrate error. The trial court did not abuse its discretion in denying her motion for new trial.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Surgery Consultation*

In approximately 1978, Enholm had a bilateral mastectomy for polycystic breast disease, followed by reconstructive surgery with breast implants. Approximately 34 years later, Enholm consulted with Cohen, a plastic surgeon, because of deformities in

2

her breasts and related pain. She told Cohen she wanted larger, softer breasts. After discussing alternatives with Cohen, Enholm agreed on a plan to replace her existing implants and to soften her breasts with conventional fat injections.

A few days later, Enholm again met with Cohen. She was interested in having a different fat transfer procedure, called cell-enhanced fat transfer (CEFT).[1]

CEFT is an experimental procedure that involves removing fat by liposuction from one area of the patient's body and reintroducing the fat into the patient's breasts. Cohen's expert explained that in CEFT, a device "like a centrifuge" is used to "clean and prepare the fat. Using a special enzyme, the device separates" the body's "natural regenerative cells (blood vessel cells, stem cells) that are within [the patient's] own fat and then concentrates them." These "cells are then mixed back" into a separate quantity of the patient's fat that was set aside and "is reimplanted via injection into the breasts. The addition and mixing of these concentrated cells to the fat is thought to allow for a better blood supply and more successful survival of the transferred fat."

---

[1] Without objection from Enholm, Cohen's attorneys lodged with this Court a binder containing documentary evidence they lodged in the trial court. Cohen's lawyers should have instead complied with California Rules of Court, rule 8.122(a)(2) [respondent's counter-designation] and (a)(3) [designating exhibits for copying into clerk's transcript] or alternatively, with rule 8.155 [augmenting the record] or rule 8.224 [transmitting exhibits]. The "Notice of Lodgment" submitted by Cohen on appeal does not comply with any of these rules.

3

B.  *Informed Consent Documents*

Cohen's clinic note for January 12, 2012, states he discussed the "risks, benefits and alternatives" of CEFT with Enholm.  The note also states:

> "I have explained this is a nonlabeled use.  I have explained to her any implications regarding breast cancer recurrence, etc.  I have given her a paper regarding autogenous fat transfer to the breast and what we do know at the present time. . . .  [¶]  In addition, she might want to tweak her face with a little mid face lift and use some of the cell-enriched fat to the cheek area and around the face.  I have discussed this with her as well."

On January 30, 2012, Enholm signed an "Informed Consent Bilateral Breast Reconstruction with Cell Enriched Autologous Fat Transfer and CEFT to Face."  This document states in uppercase letters, "OFF-LABEL USE."  The form explains nine "risks of breast reconstruction surgery" and also discusses "alternative treatment."

On February 1, 2012, Enholm met again with Cohen, "electing to proceed with CEFT on the breast augmentations as well as her cheeks."  Cohen's clinic note states Enholm understood the experimental nature of the CEFT study.  She initialed and signed a separate "Informed Consent—Bilateral breast reconstruction with implant exchange using silicone implants . . . ."  This document includes "general information" about the surgery and a four-page discussion of inherent risks.

On February 1, 2012, Enholm signed a separate six-page document entitled "Informed Consent Form"—"Fat Grafting: Patient and Physician Satisfaction Study."  The document states, "You are being asked to participate in this research study because you will receive a fat grafting procedure performed by Dr. Cohen.  Your participation is voluntary.  Please read this consent form and ask the researcher any questions you may

4

have about the study."   The document explains, "This study will . . . enable us to determine if the addition of your own regenerative cells which are found in your fat and then added back to your fat for grafting is better than conventional fat grafting . . . ."

Enholm also signed a separate document entitled "Consent for Surgery/Procedure or Treatment," authorizing Cohen to perform "[b]ilateral breast reconstruction with cell enriched autologous fat transfer and CEFT to face."  Enholm acknowledged having received information on "[i]nformed [c]onsent for bilateral breast reconstruction with cell enriched autologous fat transfer and CEFT to face."  Enholm checked the box stating, "I have been asked if I want a more detailed explanation, but I am satisfied with the explanation, and do not want more information."

C.  *Surgery*

On February 12, 2012, Cohen performed surgery.  His operative note states:

> "This is a woman, who has bilateral mild capsular contractures, worse on the left than the right side, with some discomfort in the left lateral breast region. . . .  [T]he patient desires to have these removed for further reconstructive purposes and to eliminate some of the capsular contraction . . . .  In addition, she has elected after a very thorough informed consent, to use cell-enriched fat transfer both to the regional chest wall around the breasts, as well as to the face.  The patient understands the risks, benefits, alternatives, and limitations of treatment, and wished to proceed."

D.  *Postoperative Care*

The next day, Cohen examined Enholm and found her to be bruised, "as expected," but "breasts look terrific" and face, although swollen "looks great."

5

In July 2012 Enholm informed Cohen she had been diagnosed with uterine cancer. Enholm asked Cohen whether the fat cell injections were related to her cancer. He replied there were no such reports in 6,000 patients.

E. *Billing Code Error*

Meanwhile, Enholm discovered Cohen's office had erroneously billed her health insurer for the reconstructive surgery using an insurance code for breast cancer. Once notified of the error, Cohen's office contacted the insurer to correct the error. The insurance company corrected its records in October 2012.

F. *Enholm Sues Cohen, Faces Plus and Cytori Pharmaceuticals*

Enholm sued Cohen, Faces Plus (Cohen's medical corporation) (collectively, Cohen), and Cytori Pharmaceuticals, Inc. (Cytori).[2] She alleged CEFT involves creating a "new 'pharmaceutical'" that violates FDA regulations. Because Cohen did not disclose these facts to her, she alleged he performed surgery without her informed consent. She sued Cohen for medical malpractice, fraud (based on Cohen's representations the procedure was safe and FDA approved as an off-label use), and libel (based on telling her insurer she had breast cancer).

Against Cytori, Enholm alleged Cytori manufactured "certain drugs, tissue extraction equipment and other products" used in her surgery. She alleged Cytori's product was "defective," and she sued Cytori for battery, product liability, and fraud. In

---

[2] Enholm's complaint alleges Faces Plus "is owned and operated by Defendant Steven R. Cohen." Enholm did not allege any independent basis of liability against Faces Plus.

June 2014 Enholm filed a second amended complaint, adding details but containing essentially the same charging allegations.

G. *Cohen's Motion for Summary Judgment*

In July 2014 Cohen and Faces Plus moved for summary judgment. The motion was supported by a declaration from Joel Aronowitz, M.D., and excerpts from Enholm's deposition.

Aronowitz is board certified in plastic surgery. He is the medical director of the stem cell center at Cedars Sinai Medical Center. He has written papers on and is "very familiar" with fat transfer procedures "like the one performed in this case." Aronowitz reviewed Enholm's medical records, deposition, and discovery responses.

Aronowitz stated "Cohen's pre-operative care, consent discussions, and information provided to the patient on the CEFT procedure and study were at all times within the standard of care." He explained CEFT "did not add anything to the patient's body that didn't already exist. All of the material injected into the patient's face and breast was exclusively her own adipose tissue. . . . None of these cells were . . . artificially modified in the CEFT process. All re-injected cells were the same, unmodified cells that were present in Ms. Enholm's body to begin with." Aronowitz states the "Cytori machine simply removes other types of cells present in the patient's adipose tissue . . . so the re-injected fat contains a higher concentration of stem cells."

Aronowitz's declaration states CEFT did not cause Enholm's cancer. He explained "there is no biological mechanism by which stem cells could reasonably migrate from the breast/face to the ovaries."

7

Aronowitz also stated Enholm's surgery did not violate FDA regulations. "This was a surgical procedure that did not involve any new drug or implant. The FDA does not approve surgical procedures or regulate the practice of medicine."

With respect to the billing code error, Aronowitz stated Cohen's staff "revised insurance billing information in a timely fashion" after learning of the error. According to Aronowitz, "[t]hese types of billing errors do occur in common practice. When such errors do occur, the standard of care requires reasonable steps to be taken to correct the errors. In this case, Dr. Cohen directed the billing staff to make corrections in a timely and appropriate fashion."

Cohen's lawyers also lodged excerpts from Enholm's deposition, where Enholm admitted (1) she had no complaints about the surgical results, (2) no physician had attributed her ovarian cancer to the surgery, and (3) she sustained no physical injury from the surgery:

> "Q: You don't have any complaints about the aesthetics, and the pain that you were previously experiencing in your left breast has been relieved by the procedure, correct?
>
> "A: Correct. [¶] . . .
>
> "Q: Have any of your healthcare providers who have treated you for the fallopian tube cancer in any way attributed the development of that cancer to Dr. Cohen's surgery . . . .
>
> "A: No, not that I'm aware. [¶] . . .
>
> "Q: [H]ave you been told by anybody [other than your attorney] that the stem cell fat transfer procedure performed by Dr. Cohen has caused any type of physical injury to you?" [¶] . . .
>
> "A: No."

8

H. *Enholm's Opposition*

Enholm did not submit any expert declaration in opposition. Her attorney's notice of lodgment states he lodged 10 documents, including declarations, deposition excerpts, an FDA "decision" and "warning letter." However, none of these exhibits is in the clerk's transcript or otherwise before us.

Enholm's attorney also responded to Cohen's separate statement of undisputed material facts by *admitting* the following as undisputed:

> "No healthcare providers have ever told [Enholm] she is going to require any future medical care stemming from Dr. Cohen's treatment."
>
> "Cell enriched fat transfer ('CEFT') to Ms. Enholm's breasts and face did not cause or contribute to the development of ovarian cancer. Changing the location of a patient's adipose stem cells would not induce, or enhance, the formation of a cancer somewhere else in the body."
>
> "Plaintiff has been given a clean bill of health by her UCSD oncologists following treatment for her fallopian tube cancer."
>
> "Plaintiff testified she has no aesthetic complaints following Dr. Cohen's surgery, and his surgery successfully alleviated the pain she has been experiencing due to contractures from her prior implants."

I. *The Hearing*

At the hearing, Enholm's attorney explained "this is not a traditional or, rather, common medical malpractice action . . . . It's primarily one for fraud, the allegation being that Dr. Cohen performed a procedure on my client knowingly using a non-FDA approved device and a non-FDA approved procedure, a drug, according to the FDA, and without her knowledge and consent." However, when questioned by the trial court,

9

counsel conceded Enholm sustained no physical injuries from surgery. In fact, she felt better afterwards:

> "The Court: What's the damage?
>
> "A: The damage is she had a surgery that she would not have otherwise undergone, which is indicated in her declaration.
>
> "The Court: She's not complaining about the effects of it.
>
> "A: That's correct, Your Honor. . . .
>
> "The Court: What's the damage?
>
> "A: Having the surgery, Your Honor. [¶] . . .
>
> "The Court: And she feels better now than she did before?
>
> "A: Yes, Your Honor."

J. *Summary Judgment*

The court granted summary judgment. The court determined Enholm's evidence was "insufficient and/or inadmissible to establish that the procedure, device, or substance utilized by Defendants, in the manner used, were illegal." The court also found "there is no evidence to support that Plaintiff suffered injury/damages as a result of Defendants' conduct."

The court determined there was no evidence to support a triable issue "with respect to the intent/causation elements" on fraud, "which Plaintiff failed to address. Additionally, Plaintiff has submitted no evidence to support that Defendants acted with malice as it concerns the libel claim . . . ."

10

K. *Cytori Settlement*

Meanwhile, Enholm and Cytori settled. Enholm voluntarily dismissed Cytori with prejudice. In August 2015 this Court dismissed Enholm's appeal as to Cytori in light of the settlement agreement and subsequent voluntary dismissal.[3]

After the trial court denied Enholm's motion for new trial, Enholm timely filed a notice of appeal from the judgment.

DISCUSSION

I. *THE TRIAL COURT CORRECTLY ENTERED SUMMARY JUDGMENT*

A. *Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo . . . ." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 (*Merrill*).)

"In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'" (*Merrill, supra,* 26 Cal.4th at pp. 476–477.)

---

[3] Because Enholm's appeal as to Cytori was dismissed, we ignore the arguments in Enholm's brief that her settlement was the result of undue influence, duress, and coercion, and a conspiracy among the defendants and her lawyer.

11

"The court must 'grant[ ]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' [citation]—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' [citation].  The moving party must 'support[ ]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.'  [Citation.]  Likewise, any adverse party may oppose the motion, and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.'"  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

"In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra,* 25 Cal.4th at p. 843.)  "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.)

B.  *Informed Consent*

It is difficult to determine exactly what legal arguments Enholm asserts on appeal. A substantial part of Enholm's brief consists of complaints against her trial attorney.  She accuses him of having an undisclosed conflict of interest, and he allowed defendants "to present false and misleading information to the court."  She states her attorney "did not oppose" summary judgment and "hi jacked" her case to "cover up" her injuries.

Enholm's brief admits she presented no material evidence to oppose summary judgment.  She blames her lawyer, stating, "Appellan[t's] attorney  . . . he was the one who did not rebut the expert evidence . . . .  His failure to bring forth that 'conflicting evidence' was prejudice that caused Appellant to lose her case."  She acknowledges her attorney admitted in open court she sustained no injuries; however, she contends her attorney was actually "collaborating with" Cohen and this was "prejudice that caused [her] to lose her case."

Enholm's complaints concerning her former lawyer are not properly before this Court, and we do not consider them.

To the extent Enholm's brief frames legal issues challenging the judgment, her arguments center on lack of informed consent.  She asserts:  (1) Cohen did not advise her of "ALL" risks and benefits; (2) her case is "akin to *Hanson v.* [*Grode*] (1999) 76 Cal.App.4th 601," where Hanson "sued a medical physician just like Appellant"; (3) Cohen's deposition "confirms that he subjected" her to an "unapproved medical procedure"; (4) citing *Berkey v. Anderson* (1969) 1 Cal.App.3d 790, she contends Cohen committed battery; (5) the reporter's transcript shows she suffered "disproportion" injury;

13

(6) Cohen did not file a separate statement of undisputed facts; (7) Cohen submitted only one expert declaration, and *Aguilar* requires at least two declarations; (8) "Just because Dr. Cohen provides an unopposed declaration by an expert does not necessarily mean the court should grant summary judgment"; (9) Aronowitz's declaration "has no more worth than another's declaration"; (10) Aronowitz's declaration was contradicted by a February 2012 *People* magazine article; and (11) citing *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, she contends the court "excluded evidence that would have reversed the summary judgment."  In her reply brief, Enholm adds that *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623 is factually similar and requires reversal.

We address each of these issues below, after summarizing the applicable legal principles.

C. *Informed Consent—Law*

The seminal case for informed consent for medical treatment is *Cobbs v. Grant* (1972) 8 Cal.3d 229.  There, our Supreme Court distinguished between two types of duty to disclose.  "[W]hen a given procedure inherently involves a known risk of death or serious bodily harm, a medical doctor has a duty to disclose to his patient the potential of death or serious harm, and to explain in lay terms the complications that might possibly occur.  Beyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances."  (*Id.* at pp. 244–245.)  As the court subsequently explained in *Arato v. Avedon* (1993) 5 Cal.4th 1172, expert testimony may be necessary to explain

14

the beyond-minimal-disclosure aspect of the duty, because the scope of such duty depends on a professional standard. (*Id.* at p. 1191.)

D. *Cohen Met His Burden*

1. *No injury*

Liability for lack of informed consent attaches if (1) the physician failed to disclose a known material risk inherent in the treatment, (2) the risk materialized, (3) there is a casual relationship between the physician's failure to inform and the plaintiff's injury because a reasonable person would have declined the treatment had she been informed of the risk. (*Cobbs v. Grant*, *supra*, 8 Cal.3d at pp. 244-245.)

"An action for failure to obtain informed consent lies where 'an undisclosed inherent complication . . . occurs.'" (*Warren v. Schecter* (1997) 57 Cal.App.4th 1189, 1202, italics omitted.) The cause of action for lack of informed consent does not exist unless "'the plaintiff has suffered some legally compensable injury.'" (*Id.* at p. 1204.) "'[S]peculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.'" (*Id.* at pp. 1204-1205.)

Cohen met his burden as moving party to establish Enholm did not sustain any injury from the alleged lack of informed consent. Cohen met this burden in three overlapping proofs.

First, Cohen met his burden through admissions. Responding to Cohen's separate statement of undisputed facts, Enholm's attorneys admitted she had "no aesthetic complaints." Enholm's attorney also admitted the surgery "successfully alleviated the

15

pain she had been experiencing . . . from the prior implants."  Counsel also admitted the CEFT procedure "did not cause or contribute to the development" of Enholm's cancer.

Second, Cohen met his burden through Enholm's deposition testimony.  Enholm testified she had no aesthetic complaints and no pain from surgery.  Enholm also testified no healthcare provider had "in any way attributed" her cancer to Cohen's surgery.

Third, Cohen also met his burden through statements Enholm's lawyer made in open court.  At the hearing, Enholm's attorney stated Enholm sustained no complications from the surgery.  (See *Casey v. Overhead Door Corp.* (1999) 74 Cal.App.4th 112, 124–125 [at trial, admission by counsel for plaintiffs that they could not prove up a cause of action in tort is binding on appeal], overruled on a different ground in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 484.)

This showing was sufficient to shift the burden to Enholm to create a triable issue on the essential element of damages—i.e., that an undisclosed risk of surgery materialized.  However, the record on appeal contains no evidence to create such a triable issue.

Enholm, representing herself on appeal, elected to proceed on appeal by a clerk's transcript instead of an appellant's appendix.  She made that election and designated the contents of a clerk's transcript twice, first on December 30, 2014, and then again a week later in an "amended" designation.

16

To include her lodged exhibits in the clerk's transcript, it was incumbent upon Enholm to identify them as stated in California Rules of Court, rule 8.122(a)(3).[4]  That rule provides in part:  "[A]ll exhibits admitted in evidence, refused, or lodged are deemed part of the record, but a party wanting a copy of an exhibit included in the transcript must specify that exhibit by number or letter in its notice of designation.  If the superior court has returned a designated exhibit to a party, the party in possession of the exhibit must deliver it to the superior court clerk within 10 days after the notice designating the exhibit is served."

To implement rule 8.122(a)(3) and ease compliance with it, the judicial council form entitled "Appellant's Notice Designating Record On Appeal (Unlimited Civil Case)" that Enholm utilized has a box to check off for "[e]xhibits to be included in clerk's transcript."  Next to the check off box, it states:   "I request that the clerk include in the transcript the following exhibits that were admitted in evidence, refused, *or lodged in the superior court*."  (Italics added.)  Below this text is a blank table for typing in the requested exhibit number and document description.

On her initial designation, Enholm did not check the box indicating she wanted exhibits included and did not identify any such exhibits.

On her amended designation, it appears there was a mark in the check-off box for "[e]xhibits to be included in clerk's transcript," but that mark is stricken.  In any event,

---

4       Further references to rules are to the California Rules of Court.

17

the area entitled "Exhibit Number" and "Description" is a complete blank. Enholm identified no exhibits to be included in the clerk's transcript.

For good cause, Enholm could have cured this deficiency by timely filing a motion to augment the record in this Court. Although Enholm filed a motion to augment the record—which this Court granted—that motion included only three Cytori pleadings, not Enholm's summary judgment lodgment.

Enholm also took the unauthorized action of submitting to this Court three binders of exhibits she lodged in the superior court in support of her new trial motion. The binders were accepted by this Court, apparently because Cohen did not object. But those exhibits Enholm filed in support of her new trial motion, not summary judgment opposition.

The procedures for bringing lodged exhibits up to the Court of Appeal are not complex. As noted, the judicial council form Enholm used invites an appellant to designate such exhibits. Alternatively, an appellant can proceed with an appendix in lieu of a clerk's transcript and leave the court clerk out of the entire process. (See rules 8.124(b)(1)(B) & 8.122(b)(3)(A).)

Even if the designation goes astray, as it did here, there is a failsafe. For good cause and if timely, an appellant may seek to correct such a deficiency by filing a motion to augment the record in the Court of Appeal. (Rule 8.155.) Enholm demonstrated familiarity with that procedure. She filed a motion to augment the record (which the Court granted) one month before she filed her opening brief. However, she limited her motion to augment to some Cytori pleadings.

18

These basic rules of appellate practice apply to self-represented litigants. A civil litigant must abide by the same procedures, whether or not she chooses to employ an attorney. (*Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193.)

"""A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.""" (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Because error must be affirmatively shown (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502), an appellant has a duty to provide an adequate record to the reviewing court to establish that error. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) Failure to provide an adequate record requires that the reviewing court resolve the issue against the appellant. (*Ibid.*)

Without Enholm's lodged evidence, we are unable to determine whether the court erred in granting summary judgment on the grounds the undisputed evidence established Enholm sustained no damage or injury. Having determined from Cohen's evidence he met his burden, we therefore have no choice but to affirm. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc., supra,* 203 Cal.App.4th at p. 348.)

2. *No breach of duty of care*

Even apart from the lack any disputed evidence on damages, Cohen is independently entitled to summary judgment based on Aronowitz's uncontradicted declaration that Cohen met the standard of care in obtaining Enholm's consent.

19

Generally, expert testimony is not required on the issue of informed consent to the extent the undisclosed complication that occurred is death, serious injury, or a significant complication. (*Arato v. Avedon*, *supra*, 5 Cal.4th at p. 1191.) However, expert medical testimony is necessary to establish what disclosures, if any, should be given "in addition to those relating to the risk of death or serious injury and significant potential complications . . . ." (*Ibid.*, italics omitted)

Aronowitz's declaration states, "It is my expert opinion, Dr. Cohen's pre-operative care, consent discussions, and information provided to the patient on the CEFT procedure and study were at all times within the standard of care." Aronowitz's declaration contains an adequate foundation for this opinion. He received his medical degree over 30 years ago and is a certified Diplomate of the American Board of Plastic Surgery, a clinical assistant professor of plastic surgery at the University of Southern California Keck School of Medicine, and an expert for the California Board of Medical Quality Assurance. He was "very familiar" with fat transfer procedures "like the one performed in this case." In forming his opinions, he reviewed Enholm's medical records and deposition testimony, copies of which were attached to his declaration. Aronowitz's declaration summarizes the relevant medical records and other information he relied on in opining that the surgery did not involve any "new drug or implant" and did not violate FDA regulations. These opinions were reasonably based and not conjecture. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 186-187.)

Enholm contends the standard of care required Cohen to disclose that CEFT is not approved by the FDA. However, Aronowitz's *unopposed* expert opinion is the procedure

20

was not regulated by the FDA and Cohen met the standard of care. Aronowitz's unopposed expert opinion on the standard of care shifted the burden to Enholm. She was required to present expert testimony to establish a triable issue. (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984-985 [defendant physician who moves for summary judgment on standard of care and supports his motion with expert declaration is entitled to summary judgment unless plaintiff submits conflicting expert evidence].) The FDA status of CEFT and any of its inherent risks are matters beyond the knowledge of lay witnesses. Enholm's failure to present conflicting expert opinion testimony on this issue required the court to grant summary judgment to Cohen.

3. *Enholm's other arguments lack merit*

a. *Hanson v. Grode*

Enholm contends her case is "akin" to *Hanson v. Grode, supra*, 76 Cal.App.4th 601, which reversed summary judgment. However, *Hanson* is significantly different from Enholm's case. The plaintiff in *Hanson* submitted a physician's declaration stating the defendant acted below the standard of care. (*Id.* at p. 605.)

b. *Cohen's deposition*

Enholm contends Cohen's deposition testimony "confirms he subjected" her to an "unapproved medical procedure." However, Cohen's deposition is not in the record because Enholm did not designate her lodged exhibits to be included in the clerk's transcript.

c. *Berkey v. Anderson*

Citing *Berkey v. Anderson, supra,* 1 Cal.App.3d 790, Enholm contends Cohen committed "battery." *Berkey* is off-point because Enholm did not allege a battery cause of action against Cohen. She alleged battery only against Cytori. The allegations of the complaint delimit the scope of the issues on summary judgment. (*Couch v. San Juan Unified School Dist.* (1995) 33 Cal.App.4th 1491, 1499.) A plaintiff may not defeat a summary judgment motion by producing evidence to support claims outside the issues framed by the pleadings. (*City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal.App.4th 633, 639.)

d. *Disproportion injury*

Citing pages 2 through 4 of the reporter's transcript from the hearing on the motion for summary judgment, Enholm contends there is a triable issue "Cohen actually caused her injury—she complained of 'disproportion.'" However, the cited pages do not contain evidence, but are lawyer argument. Moreover, Enholm's lawyer did not state Enholm suffered a disproportion injury. He said Enholm had no complaints about the "effects" of surgery.

e. *Separate statement*

Enholm contends summary judgment was improperly granted because Cohen's lawyers failed to file a separate statement of undisputed material facts. Enholm is incorrect. Cohen's lawyers filed a separate statement, and Enholm's lawyer responded to it.

22

f. *Only one declaration*

Code of Civil Procedure[5] section 437c, subdivision (b)(1) provides a motion for summary judgment "shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." Similarly, in *Aguilar, supra,* 25 Cal.4th 826, the Supreme Court quoted this statutory language in stating the moving party must support the motion "with evidence including 'affidavits, declarations . . . .'" (*Id.* at p. 843.)

Taking the plural word "declarations" in section 437c(b)(1) and *Aguilar* literally, Enholm contends summary judgment cannot be granted unless the moving party submits at least *two* declarations. Because Cohen's motion was supported by only one expert declaration, Enholm contends summary judgment was improper.

Enholm's assertion is incorrect. As a general principle of statutory interpretation, depending on the context, words in the plural form may apply to a single subject when necessary to effectuate the Legislature's intent. "These rules reflect the common understanding that the English language does not always carefully differentiate between singular and plural word forms, and especially in the abstract, such as in legislation prescribing a general rule for future application." (2A Singer, Sutherland Statutory Construction (7th ed. 2015) § 47.34.)

---

5      All statutory references are to the Code of Civil Procedure. When referring to statutory subparts, the word "subdivision" is omitted.

More specifically here, the Code of Civil Procedure states that the plural form of words appearing in that code also includes the singular. Section 17(a) provides in part: "[T]he singular number includes the plural and the plural the singular . . . ."

Accordingly, the plural "declarations" in section 437c(b)(1) does not mean a motion for summary judgment cannot be sustained based on a single declaration constituting substantial evidence. This interpretation of section 437c(b)(1) is compelled not only by section 17(a) but also under Supreme Court authority stating that substantial evidence to sustain a finding may consist of a single witness's testimony. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) The testimony of one witness may be sufficient to sustain a finding because substantial evidence analysis focuses on the quality—not quantity—of evidence. Thus, summary judgment may be entered based on a single declaration. (E.g., *Petersen v. Securities Settlement Corp.* (1991) 226 Cal.App.3d 1445, 1457-1458 [summary judgment affirmed based on one unrebutted declaration].)

g. *Issues involving Aronowitz's declaration*

Enholm makes several separate arguments attacking the trial court's reliance on Aronowitz's declaration. She asserts Aronowitz's declaration "has no more worth than another's declaration" because it was "contradicted" by a magazine article. She argues, "Just because Dr. Cohen provides an unopposed declaration by an expert does not necessarily mean the court should grant summary judgment."

These assertions are unavailing. The magazine article, if offered to prove the truth of the assertions in it, is inadmissible hearsay and therefore cannot create a triable issue. (*People v. Whitt* (1990) 51 Cal.3d 620, 643, fn. 15 [magazine article is hearsay]; *Crouse*

24

*v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524 [to avoid summary judgment, a party must produce admissible evidence].)

   h.  *Cassim v. Allstate Insurance Co.*

   Citing *Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th 780, Enholm contends the court committed a "miscarriage of justice" by excluding evidence that would have reversed summary judgment.  *Cassim* is off-point.  There, in a case involving an insurance company's bad faith, the Supreme Court considered whether counsel's closing argument to the jury was misconduct and, if so, whether the misconduct was prejudicial.  *Cassim* is not a summary judgment case and Enholm's brief does not cogently explain how *Cassim* applies here.

   i.  *Nelson v. Gaunt*

   In her reply brief, Enholm contends *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623 (questioned on other grounds in *Dumes v. Stocker* (1989) 213 Cal.App.3d 1262, 1268, fn. 13) involves "similar facts" and compels reversal.  However, the facts in *Nelson* are vastly different from those here.  In *Nelson*, a plastic surgeon injected silicone into a patient's breasts.  The physician told the patient silicone was "inert" and "had absolutely no side effects"—even though the FDA had determined silicone was "dangerous for use in human body tissue" and the FDA had "obtained an injunction prohibiting" transporting silicone across state lines.  (*Nelson,* at p. 629.)  As a result, the plaintiff in *Nelson* was required to undergo a double mastectomy because silicone had "overtaken the normal breast tissue."  (*Id.* at pp. 630-631.)

25

Unlike *Nelson*, here the uncontradicted expert opinion evidence was CEFT Cohen performed was not regulated by the FDA. Moreover, Enholm testified in her deposition that no physician has attributed her cancer to Cohen's surgery.

4. *Fraud and libel*

The trial court also determined Cohen was entitled to summary judgment on Enholm's causes of action for fraud and libel. These causes of action also fail because Enholm conceded she sustained no injury. No person other than her health care insurer and providers were aware of the erroneous diagnostic code for cancer. Enholm testified she was not subjected to hatred, contempt, or ridicule. She was not shunned, nor did she suffer any injury in her occupation as a result of the erroneous billing code.

The rules of court require a party to "[s]tate each point under a separate heading or subheading summarizing the point . . . ." (Rule 8.204(a)(1)(B).) Enholm's opening brief contains no argument heading regarding the court's ruling on fraud and libel. Enholm has forfeited any argument about the correctness of such rulings. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 ["[W]e do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument."]

Ignoring this forfeiture and attempting to discern a legal argument in her brief, it appears Enholm contends there is evidence at "CT 18" to create a triable issue on fraud or libel. Citing to "CT 18," Enholm complains the trial court "overlooked" this evidence. However, "CT 18" is a page of Enholm's second amended complaint. Allegations in one's own complaint do not create triable issues. (*College Hospital Inc. v. Superior*

26

*Court* (1994) 8 Cal.4th 704, 720, fn. 7.) In any event, the record does not support Enholm's assertion the trial court "overlooked" her opposition. Before the hearing, the court prepared a detailed tentative ruling that summarizes Enholm's opposition evidence and explains why it is legally insufficient to defeat summary judgment.

## II. *THE COURT CORRECTLY DENIED THE MOTION FOR NEW TRIAL*

### A. *Factual and Procedural Background*

After the court entered summary judgment, Enholm fired her lawyer. Self-represented, she filed a motion for new trial on the grounds her attorney "intentionally obstructed justice [and] suppressed evidence . . . ." She stated her attorney "did not produce any evidence" and "did not seek out one Professional witness." She argued the Cytori settlement was "fraudulent" and Cohen had "altered" his medical records.

In "supplemental" points and authorities, Enholm also asserted a new trial should be granted because (1) her attorney committed malpractice, constituting "surprise"; (2) summary judgment was erroneous because "[p]laintiff had amended her complaint evidencing a triable issue of fact"; and (3) there was "newly discovered material evidence that could not, with reasonable diligence, have been produced at trial."

The clerk's transcript does not contain the 12 exhibits Enholm lodged with her new trial motion. Enholm did not designate them to be included in the clerk's transcript. However, without objection from Cohen's lawyers, Enholm "lodged" in this Court three binders apparently containing those lodged exhibits.

These exhibits include (1) biographical and professional information about Enholm's lawyer; (2) excerpts from Cohen's deposition testimony; (3) excerpts of

27

Enholm's medical records; (4) biographical information about Cohen; (5) an internet article entitled, "Suzanne Somers: New Breasts, New Start"; (6) an October 2014 FDA document entitled, "Same Surgical Procedure Exception under 21 [Code of Federal Regulations] 1271.15(b): Questions and Answers Regarding the Scope of the Exception"; (7) an FDA "update" dated September 2006; (8) a redacted appellate brief filed in 2012 in a case entitled *Cytori Therapeutics, Inc. v. Food and Drug Administration*, Case Nos. 11-1268-1279; (9) e-mails dated 2012; (10) Enholm's attorney fee agreement; (11) correspondence by Enholm's trial lawyer; and (12) "Instructions for Use, Stem Source Reagent" by Cytori, dated September 2010.

At the hearing, Enholm argued that the October 2014 FDA document was "new evidence" establishing the CEFT procedure Cohen performed was not an "off label" use unregulated by the FDA, but was unlawful. " Enholm told the trial court:

> " . . . It's very black and white here. You cannot manipulate these cells, you cannot change them, you absolutely cannot add Celase[6] . . . to them . . . . [¶] . . .
>
> " . . . He manipulated my cells. He manipulated them with Celase. He does not qualify under the [FDA] exemption. That's exactly what this explains."

The trial court rejected this argument, stating, "This isn't new, though. This all existed at the time of the summary judgment motion." When the trial court explained to

---

6    The record does not contain evidence explaining the CEFT procedure in any detail. The parties seem to agree, however, that Celase is a product manufactured by Cytori, and that Cohen used Celase in the CEFT procedure he performed on Enholm.

Enholm that the undisputed expert testimony contradicted her assertions, she blamed her lawyer.

On appeal,[7] Enholm contends the trial court "abused its discretion" in denying her motion for new trial. She contends her attorney committed "misconduct and attorney malfeasance" and had a "conflict of interest which he secretly was working for Cohen." She contends this alleged attorney neglect constitutes "accident or surprise" warranting a new trial under *Fowlkes v. Ingraham* (1947) 81 Cal.App.2d 745, 747. Enholm contends that an October 2014 "clarification" from the FDA regarding CEFT is newly discovered evidence also warranting a new trial.

B. *The Standard of Review*

Citing *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, Cohen's lawyers contend that when a motion for new trial is made following summary judgment, the motion may only be granted if there are new or different facts, circumstances, or law. Cohen's argument is incorrect. The issue in *Passavanti* was whether a postjudgment motion for reconsideration would be treated as a motion for new trial for purposes of determining whether the filing of the motion extended the plaintiff's time to appeal from the judgment. *Passavanti* does not address the grounds upon which a motion for new trial may be made following a summary judgment. Contrary to Cohen's assertions, an

---

[7] Enholm's notice of appeal, filed December 30, 2014, purports to appeal from the judgment entered October 17, 2014 and the order denying her motion for new trial. The order denying her new trial motion is not directly appealable; however, it is reviewable on appeal from the judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.)

29

order granting summary judgment may be challenged by a motion for new trial on "'any available statutory ground for a new trial.'" (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176.)

Generally, rulings on new trial motions are reviewed for abuse of discretion. (*Aguilar, supra,* 25 Cal.4th at p. 859.) However, in a motion for new trial following summary judgment, the determinations underlying the denial dictate the standard of review. To the extent the denial is based on resolving a question of law, we examine the matter de novo. (*Id.* at p. 860.) To the extent the denial is based on issues not directly related to the merits of summary judgment, such as whether there is newly discovered evidence, we review the order for an abuse of discretion. (*Hall v. Goodwill Industries of Southern California* (2011) 193 Cal.App.4th 718, 730.)

C. *Enholm's Complaints Against Her Lawyer Are Not Grounds for New Trial*

Section 657(3) provides that a new trial may be granted for "[a]ccident or surprise, which ordinary prudence could not have guarded against." Enholm contends her attorney's alleged conduct is accident or surprise warranting a new trial. We disagree. In a civil case, "negligence of trial counsel is not a ground upon which a new trial may be granted." (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 155.)

Enholm's reliance on *Fowlkes v. Ingraham*, *supra,* 81 Cal.App.2d 745 is misplaced. *Fowlkes* does not involve a motion for new trial brought on the ground of alleged attorney malpractice or misconduct. It involves the entirely distinct issue of whether an attorney has implied authority to waive his or her client's right of appeal. (*Id.* at p. 748.)

30

D. *No Newly Discovered Evidence*

Under section 657(4), the trial court may grant a new trial based on "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial."  In this statutory context, "'material'" means likely to produce a different result."  (*Wood v. Jamison* (2008) 167 Cal.App.4th 156, 161.)

The "newly discovered" evidence Enholm relies on has almost no probative value. It is an FDA "*Draft* Guidance for the Industry" (italics added) relating to the "same surgical procedure exception under 21 CFR 1271.15(b)."  Enholm contends this is a "clarification" establishing the CEFT procedure Cohen performed is regulated by the FDA and is unlawful.  However, the trial court correctly noted "[t]here are many things in that . . . clarification that would require expert opinion to understand what's meant . . . ." Enholm submitted no such expert testimony.  Moreover, the document states:  "This guidance document is for comment purposes only."  A header at the top of each page states, "*Draft—Not for Implementation*."  (Italics added.)   The trial court did not abuse its discretion in determining this "draft" document that is "not for implementation" does not create a triable issue contradicting Aronowitz's declaration.

In any event, as the trial court remarked, this is nothing new.  From inception, Enholm's lawyer has asserted  Cohen's manipulation of fat cells in the CEFT procedure violated FDA regulations.  The first sentence of Enholm's opposition to summary judgment states, "This action arises from certain illegal and non-FDA approved medical products and devices used on and injected into plaintiff by Defendant . . . ."  As the trial

31

court correctly commented, "It's what you told me before."  Enholm lost summary judgment not because of the absence of this so-called "newly discovered evidence," but because she submitted no expert testimony to contradict Aronowitz's declaration, and she presented no evidence of damages. Nothing in the FDA document or any other so-called newly discovered evidence Enholm lodged with her motion for new trial changed these outcome-determinative and undisputed facts.

DISPOSITION

The judgment is affirmed.  Cohen is entitled to costs on appeal.


NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.

32